**LUMBERMEN'S MUTUAL CASUALTY COMPANY et al., Appellants**

**v.**

**Charles EINBINDER, Deputy Commissioner, United States Department of Labor, Appellee.**

**No. 18269.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 2, 1964.

Decided Feb. 25, 1965.

---

Mr. Warren E. Magee, Washington, D. C., for appellants.

Mr. Martin Jacobs, of the bar of the Court of Appeals of New York, *pro hac vice,* by special leave of court, with whom Asst. Atty. Gen. John W. Douglas, David C. Acheson, U. S. Atty., and Sherman L. Cohn, Atty., Dept. of Justice, were on the brief, for appellee. Mr. Robert C. McDiarmid, Atty., Dept. of Justice, also entered an appearance for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and BASTIAN and McGOWAN, Circuit Judges.

WILBUR K. MILLER, Senior Circuit Judge.

This case arises under the Workmen's Compensation Act.[1] On September 29, 1958, Roy Jackson Mock, an employee of Thompson's Dairy, Inc., was injured in an accident which occurred in the course of his employment. He fell down a flight of four concrete steps while carrying two cans of milk, was hospitalized for ten days, and remained away from work through October 30, 1958. The doctors thought he had a back injury and treated him accordingly. Compensation and medical expenses for that period were paid by Lumbermen's Mutual Casualty Company, which was then Thompson's insurance carrier. On May 21, 1959, Mock filed a claim for compensation on account of the injury sustained on September 29, 1958, which he describes as a "disk injury to back."

In another accident, which occurred February 4, 1961, the claimant, while loading a truck, had one foot on the truck and one on a conveyor rack. "[H]is foot slipped or * * * his right leg gave way and he fell down between the chute and the truck as a result he sustained contusions of the chest and right groin and right hip." [2] At this time, Thompson's insurance carrier was American

---

1. Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 STAT. 1424, 33 U.S.C. §§ 901 *et seq.,* which was made applicable to the District of Columbia by 45 STAT. 600, § 36–501, D.C.CODE (1961).

2. Memorandum of Informal Conference March 23, 1962, by Claims Examiner.

Mutual Liability Insurance Company, instead of Lumbermen's. On account of the injury, Mock filed a claim for compensation on January 30, 1962.

The record discloses no action as to either claim until November 23, 1962, when the Deputy Commissioner conducted an evidentiary hearing on both, which were numbered respectively 284–926 and 284–1076. At the outset, the Deputy Commissioner made the following announcement:

"This is a consolidated hearing and not a consolidated cause of action proceeding. I want a record in each case. This hearing is being held upon the application of the interested parties."

Also at the outset of the hearing, the attorney for the claimant said, "[W]e are claiming specifically medical benefits resulting from the injury of September 29, 1958," and " * * * Specifically we are claiming medical benefits resulting from the injury of February 4, 1961."

During the hearing it developed that Mock was injured in an earlier accident—on December 17, 1957. At that time, "the patient [claimant Mock] fell out of a truck and injured his right leg and left elbow. Shortly after that he began to have pain in his low back and right hip." [3] Apparently the pain in the right hip continued, for on February 4, 1958, he was examined and treated by Dr. Kenmore, who gave him injections of novocaine into the right hip area on February 4, 7 and 11, 1958. This accident is the subject of the Deputy Commissioner's file No. 284–881, which appears as an exhibit in the present record. What steps, if any, have been taken in No. 284–881 the exhibit does not disclose.

After the consolidated hearing concerning the injuries of September 29, 1958, and February 4, 1961, the Deputy

Commissioner on February 15, 1963, made an award with respect only to the first of the two claims he was considering. Whether he has made any findings or an award concerning the claim based on the injury of February 4, 1961, does not appear in the record. He found that as a consequence of the accident of September 29, 1958, the claimant suffered, among other things, "aggravation of pre-existing osteoarthritis of his right hip," [4] but did not find that any subsequent treatment would be required. He also found that after October 30, 1958, "the claimant continued to have pains in his right hip and required treatment, including injections into his right hip joint; that the need for the treatment was due to the injury of September 29, 1958 * * *." Upon these findings of fact, the Deputy Commissioner then made the following award:

"The employer and the insurance carrier shall also pay the reasonable value of all medical expenses, including hospitalization and care, incurred by the claimant as a result of the injury of September 29, 1958, and shall continue to furnish the claimant with such necessary medical treatment, hospitalization and care as the nature of the injury and the process of recovery may require."

On March 15, 1963, Thompson's Dairy and Lumbermen's sued the Deputy Commissioner in the United States District Court praying that the award be adjudged to be not in accordance with law. In an opinion filed September 27, 1963, the District Judge stated:

"The question in this Workmen's Compensation case is whether the findings of fact made by the Deputy Commissioner * * * are sustained by substantial evidence. Spe-

---

3. Report of Dr. Kenmore, attending physician, dated February 14, 1958.

4. At the time of the hearing, November 23, 1962, all the doctors had decided that Mock was suffering from a degenerative disease of the right femur caused by lack

of circulation in the bone, which antedated the injury of December 17, 1957. It was diagnosed as *malacosis senilis*, a localized osteoarthritis, a disease which becomes progressively worse although in some cases it can be arrested by an operation.

cifically the question * * * is whether the Deputy Commissioner was warranted in finding that the employee's present hip condition resulted from an injury that he sustained in September 1958 * * *."

He then summarized the evidence as follows:

"The employee testified that he has experienced pain 'all along' after the accident (Tr. p. 160). His wife testified that he required treatment after the accident, but not before. Lay testimony may be considered in such matters, Independent Pier Co. v. Norton, (C.A.3th) 54 F.2d 734, 735. Dr. Ferry, a medical witness, expressed the opinion that the employee's symptoms were due to his 1958 injury (Tr. p. 215). Dr. Ormandy expressed the view that a major accident would aggravate a prior arthritic condition (Tr. p. 102), and that in any event the need for medical treatment was hastened by the injury (Tr. p. 108). He also stated that there is a probability that the present traumatic arthritic condition of the right hip is connected with the 1958 injury. Dr. Rizzoli was of the opinion that arthritis of the hip can be aggravated by an injury."

After which he added:

"While perhaps this evidence is not strong, nevertheless, it is more than a scintilla and meets the test of substantiality. * * *"

Consequently, the District Judge entered an order October 7, 1963, granting summary judgment to the Deputy Commissioner. The employer and the insurance carrier appeal.

A question is, as stated by the District Court, whether the Deputy Commissioner's findings of fact are sustained by substantial evidence. Another question, not stated by the District Court, is whether the findings of fact, if sustained by substantial evidence, justify the award. "Specifically," said the District Court, "the question * * * is whether the Deputy Commissioner was warranted in finding that the employee's present hip condition resulted from an injury that he sustained in September 1958 * * *." The Deputy Commissioner made no express finding that a "present hip condition" resulted from the September, 1958, injury. He merely found that pre-existing osteoarthritis was aggravated by that injury and that as a further result the claimant continued to have pains in his right hip, for which he was given injections. The question is whether these findings are supported by substantial evidence.

The District Judge quoted statements made by five witnesses as substantial evidence that the diseased condition of the claimant's hip resulted from the injury of September, 1958. An examination of the testimony of those witnesses reveals that the statements quoted by the District Judge did not have the significance which he attributed to them. When the statements are read in full context, it is apparent that they do not constitute substantial evidence of causation.

For example, Mock testified that he has experienced pain "all along" after the accident of September, 1958. Without more, this statement might be thought to furnish some support for the Deputy Commissioner's finding that after October 30, 1958, the claimant continued to have pains in his right hip and that the need for treatment therefor was due to the September, 1958, injury. The fact is, however, that Mock had had pains in his right hip and had received injections therefor in February, 1958, and the Deputy Commissioner so found. It is therefore obvious that Mock's testimony of pains and treatment after October 30, 1958, did not amount to substantial evidence that the injury of September, 1958, was the causative factor.

Mrs. Mock's statement that her husband required treatment after the accident, but not before, referred only to home "treatment" which she herself gave; as already shown and found by the Deputy Commissioner, there was

medical treatment of the right hip before the injury of September, 1958.

It is true, as the District Court said, that Dr. Ferry, a medical witness introduced by the claimant, "expressed the opinion that the employee's symptoms were due to his 1958 injury." The District Court failed to observe, however, that Dr. Ferry was referring to the claimant's symptoms when he examined him on September 30, 1958, and diagnosed the condition as degenerative disk syndrome. The doctor said, "I felt that his symptoms *at that time* were due to the injury of September 26 [29] 1958." [Our emphasis.] This was not Dr. Ferry's final opinion.

After several examinations of the claimant in the following years, and after reviewing X-rays taken at various times, and after quoting from his notes of the several examinations, Dr. Ferry said:

"In summary, with specific reference to the patient's degenerative condition of the right hip, it is fair to say I believe that he had evidence of these changes in February 1958 and it is probable that these changes contributed to part of the symptoms he had referable to hip pain * * *. It is possible that the hip condition was aggravated by the injury of September 1958 for which I treated him. It is possible that the hip condition first seen in the films of February 1958 were brought on by a previous injury.

"The degenerative condition of the right hip, therefore, was present in February 1958 prior to the time that I first saw the patient for injury of September 1958. The hip condition may be or may have been contributing symptoms to the picture of hip discomfort. This hip condition may have been aggravated by the injury of September 1958. * * * *"

Asked this question,

"Do you feel that his condition was aggravated or accelerated by the accident of September 29, 1958?"

Dr. Ferry replied:

"It is impossible to say * * *. I can't say definitely whether the injury aggravated the hip or not."

As the District Judge said, Dr. Ormandy expressed the view that any major accident would aggravate pre-existing osteoarthritis. But in the particular case, Dr. Ormandy would say no more than that aggravation was a possibility. He also said that the claimant's present condition—a degenerative change in the hip joint—was continuing according to the natural course of the disease, and that the condition and the need for medical attention would have gone on whether the claimant fell or did not fall.

It is true, as the District Court's opinion said, that "Dr. Rizzoli was of the opinion that arthritis of the hip can be aggravated by an injury." But Dr. Rizzoli, who is not an orthopedic specialist, examined Mock on September 20, 1960, and February 9, 1961. His testimony included the following statement:

"I indicated that I thought his hip condition could be the result of trauma but felt that this was in the realm of orthopedic surgery rather than neurosurgery."

When asked this question,

"Doctor, you yourself, as a neurological surgeon did not make any determination in your mind as to whether the conditions in the hip were caused by trauma, did you sir?"

Dr. Rizzoli replied, "I did not."

We think it clear from the foregoing that the statements of the five witnesses upon which the District Court decision was based did not "meet the test of substantiality," and that its decision cannot be upheld on that basis.

We next consider whether there was any evidence, aside from that mentioned by the District Judge, which could be said to be substantial support for the findings of fact upon which the Deputy Commissioner based his award. Essentially, those findings were, as we have said, (a) that as a consequence of the

injury of September 29, 1958, the claimant suffered "aggravation of pre-existing osteoarthritis of his right hip;" and (b) that the need for the injections into the right hip joint which the claimant received after October 30, 1958, was "due to the injury of September 29, 1958."

The orthopedic experts who testified were unable to say that the injury of September 29, 1958, aggravated the pre-existing osteoarthritis of the right femur. Some said it was possible, but Dr. Eisenberg said that trauma can aggravate or accelerate osteoarthritis only when it causes a bone fracture. As we have seen, the testimony of Mock and his wife did not support a finding of aggravation. The fact that the claimant received injections into his right hip in February, 1958, casts doubt on the Deputy Commissioner's finding that the injections into the right hip after October 30, 1958, were "due to the injury of September 29, 1958." Although, as found, "the claimant continued to have pains in his right hip" subsequent to October 30, 1958, he had had such pains prior thereto as well, as we have seen.

■ We need not now decide, however, whether the finding of aggravation had substantial support in the evidence because in any event the findings were insufficient to support the award. Essential supporting findings were lacking. There was no finding that any medical expenses had been incurred by the claimant after October 30, 1958; nor that any medical treatment had been given him after that date, except that he "required treatment, including injections into his right hip joint." There was no finding that medical treatment will be necessary hereafter, so we assume that the Deputy Commissioner did not credit the testimony of the physicians who said that claimant's diseased right femur should be operated on because the condition was getting progressively worse, as osteoarthritis does.

■ The judgment of the District Court will be reversed and the cause will be remanded with instructions to remand it to the Deputy Commissioner for reconsideration, and for additional findings of fact on the essential elements we have pointed out. It may be necessary, on remand, for the Deputy Commissioner to receive additional evidence, as the factual situation may have changed since the original hearing. In addition, the District Court should instruct the Deputy Commissioner to correct the error he made at the hearing which we shall next discuss.

As has been stated earlier in this opinion, the Deputy Commissioner announced at the beginning of the hearing that it was to be a consolidated hearing of the claims based on the injuries of September 29, 1958, and February 4, 1961, but that it was not a consolidated cause of action proceeding. He said, "I want a record in each case." Probably he meant that the cases would be heard together but would not be consolidated, and that a copy of the transcript of evidence would be placed in each file. This, we think, was error. The two claims were so clearly related that they should have been consolidated. The diseased condition of the hip was common to both claims and, if the aggravation theory be adopted, either injury or both could have aggravated the disease; findings of fact should have been made and orders entered as to both injuries, particularly in view of the fact that different insurance carriers were involved.

Apparently the Deputy Commissioner made findings and an award only as to the 1958 injury because he was convinced that it alone had aggravated the disease and that there was no real injury sustained in the 1961 accident. Before he had heard any evidence as to either accident, the Deputy Commissioner three times referred to "the injury of September 29, 1958," and the "alleged injury of February 4, 1961." No less than nine times during the hearing he spoke of "the alleged injury of February 4, 1961." This repeated and deliberate use of the word "alleged" plainly indicates that the Deputy Commissioner from the beginning of the hearing had concluded that the 1961 accident produced no

injury and so could not have aggravated the disease.

There was no basis in the record for such a conclusion. The claimant stated that he was injured on February 4, 1961, as did the physician who attended him on that occasion, and a claim for medical benefits was asserted. Two doctors testified that a major injury may aggravate osteoarthritis and that the claimant suffered a major injury on February 4, 1961. If that be true, it may be assumed that the later injury would have had a greater aggravating effect because the disease had progressed for more than two years longer, thus making the condition more susceptible to aggravation; in fact, there was expert testimony to that effect.

The District Court should instruct the Deputy Commissioner to reconsider the two claims on a fully consolidated basis and to make findings of fact and enter an order with respect to both injuries.

Reversed and remanded with instructions.