Henry P. AUSTIN, Appellant,

v.

William M. O'KEEFFE, Deputy Commissioner et al., Appellees.

No. 23770.

United States Court of Appeals
Fifth Circuit.

July 5, 1967.

John A. Lloyd, Jr., St. Petersburg, Fla., for appellant.

Brooks P. Hoyt, Tampa, Fla., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellees Tampa Ship Repair & Dry Dock Co. and United States Fidelity & Guaranty Co.

Alfred H. Myers, Atty., Dept. of Labor, Charles Donahue, Sol. of Labor, James E. Hughes, Atty., U. S. Dept. of Labor, of counsel, Edward F. Boardman, U. S. Atty., E. J. Salcines, Asst. U. S. Atty., for appellee O'Keeffe.

Before PHILLIPS,* COLEMAN, and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge.

Henry P. Austin brought an injunctive proceeding under 33 U.S.C. § 921(b) [1] to set aside a Longshoremen's and Harbor Workers' Compensation Act compensation order. The District Court granted summary judgments in favor of the deputy commissioner and the two intervenors, the employer and insurance carrier. Austin appealed. We reverse and remand with directions.

On August 15, 1961, Austin was injured in the course of his employment for Tampa Ship Repair & Dry Dock Company. Another worker jerked a hose, which caught Austin's feet, throwing him to the deck of the vessel on which he was working. Austin twice underwent surgery on his right knee, but was left with substantial loss of use of his right leg. At a later time, Austin again fell,

---

* Of the Tenth Circuit, sitting by designation.

1. * * * (b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred * * *.

this time at his home, and injured his left knee.

Medical treatment was provided for Austin and compensation was paid him from the time of his first injury until November 1, 1963, when payments were terminated and the carrier denied entitlement to further benefits under the Act. Austin filed a claim for permanent and total disability benefits and additional medical treatment. The claim stated he had injured "both legs, knees and back". At the hearing on his claim before a deputy commissioner, Austin asserted (1) that the instability of his injured right leg caused his fall and injury to his left knee; (2) that as a result of alterations in his gait and abnormal stresses placed on his back and spine by his knee injuries, he had suffered either an injury to his low back or aggravation of a pre-existing condition in his low back which was previously non-disabling; (3) that his injuries caused an aggravation of pre-existing emotional or nervous disorders; (4) that his compensable injuries, or they in connection with pre-existing disabilities, had caused him to suffer total disability and a total loss of earning capacity.

The deputy commissioner found the following facts:

"* * * [C]laimant did not injure his back in the accident of August 15, 1961; * * * claimant's preexisting emotional instability was not materially permanently aggravated by the injury sustained; * * * the injury to the left leg * * * is a direct result of the injury and subsequent treatment of the right leg; * * * as the result of the injury sustained, the claimant was temporarily totally disabled from August 26, 1961, to Octo-

ber 1, 1963, inclusive; * * * as the further result of the injury sustained, the claimant has a 40 percent permanent partial loss of the use of the right leg and a 20 percent permanent partial loss of the use of the left leg * * *."

On the basis of these findings of partial disability, the deputy commissioner awarded the compensation allowable under the 33 U.S.C. § 908 schedule.

Austin filed his § 921 proceeding in the District Court claiming the deputy commissioner had failed to make findings or pass on the claim for total disability, had failed to consider the evidence as to the cause of his back disability, and had made findings and conclusions not supported by competent substantial evidence. The employer and carrier were allowed to intervene as defendants. Both filed motions for summary judgment. This appeal is from the order granting those motions.

The code section governing multiple injuries such as Austin's, 33 U.S.C. § 908(c) (22), provides,

"In any case in which there shall be * * * loss of use of, more than one member * * * set forth in paragraphs (1) to (19) of this subdivision, *not amounting to permanent total disability,* the award of compensations shall be for the * * * loss of use of, each such member * * *." [Emphasis added].

It is Austin's argument that his injuries do totally disable him, so that his compensation should be determined not by the schedules in paragraphs (1) to (19) of § 908(c) but by § 908(a).[2]

Austin does not contend that there was a disputed issue of material fact which would have necessitated a full-scale trial

2. § 908. Compensation for disability.
Compensation for disability shall be paid to the employee as follows:
(a) Permanent total disability: In case of total disability adjudged to be permanent 66⅔ per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts. * * *

in the District Court. Rather the contention is that, as a matter of law, the District Court should have enjoined the deputy commissioner's order.

We do not linger long with Austin's contentions that the deputy commissioner made erroneous findings. The standard is that set forth in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. We hold that the findings made were supported by substantial evidence.

The likelihood that the findings were incomplete is what troubles us.

The deputy commissioner found, " * * * claimant did not injure his back in the accident of August 15, 1961 * * *." It is Austin's theory, however, that he would be entitled to benefits for his back injury even though it arose subsequent to the original knee injury if it were due to stresses brought on by the leg injuries. The only expert testimony favoring Austin's theory that changes in his gait brought on his back complaints was that of Dr. Wilson, Austin's witness. On direct examination Dr. Wilson's testimony was as follows:

"Q. Did you arrive at a diagnosis as to the complaints in the lumbosacral spine?

A. This man has a degenerative lumbar disc. Any abnormal strain placed upon this particular joint would cause pain, yes, sir.

Q. Did you reach any determination as the relationship between these complaints and the injury to his right and left knees?

A. I believe that that is unconnected. The degenerative lumbar disc preexisted the injury. This was noted in 1958 on the hospital records. *Their relationship there would simply be that of some stress mechanically imposed to that joint by the fact that he was walking abnormally. And I think there is some mechanical disadvantage from his leg limp or walking abnormally as far as a direct mechanical influence on this joint is concerned.*

* * * * * *

Q. Is it consistent that these preexisting conditions could be present in a man who did heavy manual exertion such as in the occupation followed by Mr. Austin prior to this leg injury?

A. Without pain?

Q. Yes, sir.

A. I believe that with this degenerative condition he could do fairly heavy work without pain, yes, sir.

Q. Assuming that this was the situation, what, in your opinion, would be the relationship between his leg injuries and the development of pain in his back?

A. Again, I would say that the only reasonable cause for this would be the altered mechanization secondary to limping on the right leg.

* * * * * *

Q. Is it possible that these degenerative changes [in the lumbar spine] that appear in 1963 could be a product of the mechanical changes made necessary by his leg injuries?

A. I think it is possible." [Emphasis added.]

Later on the following testimony was elicited from Dr. Wilson:

"Q. And could you explain in a bit more detail the actual mechanization of the production of a back pain and change in a gait or leg instability?

A. Well, the major problem is from a different cause. In fact you are dealing with a pelvic tilt. He walks with his knee flexed on the opposite side, he also is actually extending his back ab-

normally by his flexed postural strain, so we are dealing with the effects of a short leg and extension strain, which, as I say, is simply postural, and we see him at times without pain."

The appellees contend that since Dr. Wilson first testified he believed the back complaints and the knee injuries were unconnected all his subsequent testimony on the subject was hypothetical and conjectural. We think it clear, however, that Dr. Wilson meant the two complaints were *originally* unconnected, but that the limp adversely affected the back.

On the other hand, an expert medical witness for the employer and carrier testified, in effect, that the injuries to Austin's legs did not permanently impair his back or spine.

In this state of the evidence, we conclude the deputy commissioner should have made an explicit finding as to whether Austin's leg injuries aggravated his back condition.

Austin also claims it was error for the deputy commissioner not to make an explicit finding on his claim of total disability. We are of the opinion that the finding that Austin was not entitled to total disability benefits after October 1, 1963, coupled with his further finding that claimant's disability thereafter was partial, makes it clear the commissioner was denying total disability benefits. Since the case must be remanded, however, and to be sure that Austin's claim that his three injuries have *interacted* to produce total permanent disability is considered, the commissioner should now make an explicit finding on the point.

The judgment of the District Court will be reversed and the cause will be remanded with instructions to remand it to the deputy commissioner for additional findings of fact consistently with what we have said herein, Lumberman's Mut. Cas. Co. v. Einbinder, 1965, 120 U.S.App. D.C. 56, 343 F.2d 338.

Reversed and remanded with directions.