**The TRAVELERS INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**Raymond F. BELAIR, Deputy Commissioner, United States Department of Labor, Defendant, Appellee,**
and
**Joseph Melanson, Intervenor, Appellee.**

**No. 7243.**

United States Court of Appeals
First Circuit.

Heard March 6, 1969.

Decided June 26, 1969.

---

Blair L. Perry, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for appellant.

Leavenworth Colby, Attorney, Department of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., and Morton Hollander, Attorney, Department of Justice, were on brief, for Raymond F. Belair, Deputy Commissioner, appellee.

Jules E. Angoff, Boston, Mass., for Joseph Melanson, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In January 1960 Joseph Melanson, while in the employ of McKie Lighter Company as a carpenter-foreman, was engaged in operating McKie's 40-foot workboat LOUISE, bringing himself and four other employees back through Boston Harbor from their day's work on Spectacle Island, a 30-minute trip. Passing under a bridge Melanson came out from the pilot house and his head was caught between it and the bridge, causing serious injuries. Written notice of the injury was not given, but McKie knew of the occurrence and notified its insurer, plaintiff appellant, Travelers Insurance Company. Travelers paid Melanson what it terms voluntary compensation, hereinafter more fully described, until June 1962, when Melanson sued McKie under the Jones Act, 46 U.S.C. § 688.[1] Travelers then discontinued payments, and Melanson promptly made claim and sued for compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. This claim was heard by a deputy commissioner of the United States Department of Labor, hereinafter the commissioner, who took testimony and found in favor of Melanson. Travelers sought review in the United States district court, in which proceeding Melanson intervened. The district court in an opinion, 290 F.Supp. 221, upheld the commissioner, and Travelers appeals.

Travelers' first defense, which was not sustained, is that Melanson failed to file timely notice of claim. On the commissioner's express findings Melanson did not file within the one-year statutory period, but only after Travelers discontinued the "voluntary" payments. Melanson claims that these payments tolled the one-year period. This would be so if they constituted "payment of compensation * * * without an award."[2] Travelers says the payments were not "compensation" because they did not constitute "money * * * payable * * * as provided for in this chapter," 33 U.S.C. § 902(12) and Melanson recognized this by signing a document dated March 30, 1960.[3] It may be that the payments made pursuant to this agreement were not, strict-

---

1. This suit was later dismissed, with prejudice, with Melanson's consent.

2. 33 U.S.C. § 913(a). In such event claim must be made within one year of the last payment. The fact that claim must still be filed is an answer to the government's contention on behalf of Melanson that Travelers cannot be heard to complain in the case at bar, timely claim or no, because it had actual notice. Actual notice would affect the limitations period if the employer, having such notice, failed to file a proper report of the accident. 33 U.S.C. § 930(a), (f).

3. The presently material part of this paper reads as follows:
    "I acknowledge and agree that this sum represents the voluntary payment by The Travelers Insurance Company, of benefits for the accident sustained by me on or about the fifth day of January 1960 equal to the amount that would have been payable under the Workmen's Compensation Law of Harborworkers & Longshoremen if said accident had been compensable under that Law in accordance with the provisions of an insurance policy issued by The Travelers Insurance Company to McKie Lighter Company.
    "In consideration of the payment for which receipt is hereby acknowledged, I do hereby remise, release and forever discharge, McKie Lighter Company, its successors and assigns and the insurer, The Travelers Insurance Company, from any and all claims, demands, rights or causes of action of whatever kind or nature arising out of said accident."

ly, "compensation." Only a sea lawyer, however, would notice the difference. Melanson had no lawyer, sea or otherwise; nor would he be aware of any need to obtain counsel when payments were regularly coming in. The fact that they were styled in a paper signed by him as "equal to" payments as distinguished from "payments" is not significant. This may have been clear to Travelers, but it must have been equally clear to Travelers that it alone had this sharpness of vision. The document is valueless, and if we were engaged in ethical appraisals we would say, in the light of what it sought to provide, worse than valueless. 33 U.S.C. § 916; Great Lakes Dredge & Dock Co. v. Brown, N. D.Ill., 1930, 47 F.2d 265; *see also* McCabe Inspection Serv., Inc. v. Willard, 2 Cir., 1957, 240 F.2d 942; Lawson v. Standard Dredging Co., 5 Cir., 1943, 134 F.2d 771. Notice was timely.

■■■ The substantive question in the case is whether Melanson is barred from recovery by 33 U.S.C. § 902(3), which provides, "The term 'employee' does not include a master or member of a crew of any vessel * * *." Since Melanson was the sole person engaged in operating the LOUISE at the time in question—and had done so on numerous other occasions, Travelers not unnaturally asserts that he was the crew.[4] Before testing this, however, we face the subsidiary problem of the adequacy of the commissioner's findings. Although Melanson's status as crew was the principal bone of contention, the commissioner made *no* reference to the term. The brief filed by the government[5] on his behalf in seeking to dispose of the require-

ment of factual findings, Administrative Procedure Act, 5 U.S.C. § 557(c), says that "if" there is any such requirement, Travelers has no standing to raise it because it failed to submit proposed findings or to seek to recommit for further findings. Travelers, however, properly asserted its substantive claims before the commissioner and, having done so, its only appeal from his order and findings lay to the district court by way of a suit for injunction. 33 U.S.C. § 921(b), (d). The commissioner's obligation under the Act to make findings of basic facts is unconditional. Austin v. O'Keefe, 5 Cir., 1967, 379 F.2d 930; Lumbermen's Mut. Cas. Co. v. Einbinder, 1965, 120 U.S.App.D.C. 56, 343 F.2d 338; *see also* United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 533, 66 S.Ct. 687, 90 L.Ed. 821; SEC v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626; Northeast Airlines, Inc. v. CAB, 1 Cir., 1964, 331 F.2d 579, 586. We consider the government's totally unsupported contentions an imposition on our time.

■■■ The government argues, further, that the commissioner's general finding of liability imports all necessary subsidiary findings. The converse, of course, is true; a general finding may be implied if all necessary subsidiary findings have been made. Texas Co. v. R. O'Brien & Co., 1 Cir., 1957, 242 F.2d 526. But the contention that the commissioner must be taken to have resolved all disputes or inferences in whatever manner was necessary for his general finding is just another way of denying his statutory obligation to find the underlying facts. It is meritless. If

---

4. Travelers makes no claim that Melanson was a "master" even though he was *in charge* of the vessel. "Master" is a word often signifying important distinctions in function and responsibility, June T., Inc. v. King, 5 Cir., 1961, 290 F.2d 404, 406 n. 1; United Geophysical Co. v. Vela, 5 Cir., 1956, 231 F.2d 816, 818–819, but in this case nothing turns, or should turn, on distinguishing master from crew. *See* Norton v. Warner Co., 1944, 321 U.S. 565, 571, 64 S.Ct. 747,

88 L.Ed. 931; Diomede v. Lowe, 2 Cir., 1937, 87 F.2d 296, 298, cert. denied Moran Bros. Contracting Co. v. Diomede, 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340; *cf.* Warner v. Goltra, 1934, 293 U.S. 155, 162, 55 S.Ct. 46, 79 L.Ed. 254; The Balsa, 3 Cir., 1926, 10 F.2d 408.

5. We use the term government to avoid confusion with what the commissioner himself found or asserted in his decision allowing the claim.

the commissioner's decision is to be affirmed it can be on only one of two bases: either he must have made adequate findings, or the record must be such that the omitted findings were compelled as a matter of law.[6]

The commissioner's total findings were exceptionally brief, namely, though "requested to pilot the employer's workboat LOUISE," Melanson's "primary duties [were] as carpenter-foreman on said date." This has led to much unproductive discussion. We pass over the government's constant reference to Melanson as a "driver," and the LOUISE as a "pickup launch," meant apparently to suggest that he was a chauffeur of a truck, with the observation that Melanson as well as the commissioner used seafaring terms, even if counsel dislikes them, and that the Louise was a 40′ vessel. In spite of the government's further protest that Melanson was not performing a crewman's duties because it did not appear that he filled the gasoline tank, kept the engine in repair, and painted the hull,[7] we are obliged to observe that he was serving as crew within a normal meaning of the word.[8]

This, however, is not the end of the journey. We must reject Travelers' contention that only the employee's duties at the time of the injury are of any relevance. In dealing with the Longshoremen's Act this was correct when the problem was one of distinguishing between state and federal jurisdictions. *See, e. g.* Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 190, 72 S.Ct. 216, 96 L.Ed. 205; Parker v. Motor Boat Sales, Inc., 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, *but see generally* Calbeck v. Travelers Ins. Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368. In resolving conflicts between two federal remedies, however, the question is one of status not situs. To this inquiry the employee's other duties, at least those engaged in on the day of the accident, are of significance. *See* South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732; Long Island R.R. v. Lowe, 2 Cir., 1944, 145 F.2d 516, 518. Thus in Braen v. Pfeifer Oil Transp. Co., 1959, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191, a seaman regularly employed on, and hence crew of, a barge, was temporarily assigned to lay new decking on a

---

6. Both parties seem to misunderstand the applicability of the statutory presumption of coverage, 33 U.S.C. § 920(a). Travelers suggests that, although certain evidence apparently favorable to Melanson was not only corroborated but uncontradicted, the commissioner was not obliged to accept it. Where the evidence for the claimant appeared reasonable on its face and was totally unimpeached, Travelers' contention is directly contrary to the spirit of the Act embodied in the special presumption. O'Keefe v. Smith, Hinchman & Grylls Assocs., Inc., 1965, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895. The government, on the other hand, seems to believe that when evidence against the claimant is equally substantial and undisputed the commissioner could disregard it by an explicit or implicit finding of insubstantiality on the basis of the presumption. This is not the law. *See* Travelers Ins. Co. v. Shea, 5 Cir., 1967, 382 F.2d 344, 346, cert. denied McCullough v. Travelers Ins. Co., 389 U.S. 1050, 88 S.Ct. 780, 19 L.Ed.2d 842. Once the employer has satisfied his burden of going forward, either in

the course of his or the claimant's case, the presumption falls. Del Vecchio v. Bowers, 1935, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229; John W. McGrath Corp. v. Hughes, 2 Cir., 1959, 264 F.2d 314, cert. denied 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545. We then apply the substantial evidence test to the record as a whole without reference to the presumption. O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483; Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246; Michigan Mut. Liab. Co. v. Arrien, 2 Cir., 1965, 344 F.2d 640, cert. denied 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78.

7. Nor does the crew have to sleep aboard. Harney v. Wm. Moore Bldg. Corp., 2 Cir., 1966, 359 F.2d 649.

8. "The work of causing a boat to move in navigable water is the most fundamental and characteristic function of a ship's crew." Mach v. Pennsylvania R. R., 3 Cir., 1963, 317 F.2d 761, 763. *Accord,* Norton v. Warner Co., 1944, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931.

raft, in the course of which he was injured. Concededly, he was not a member of the crew of the raft. The court said, 361 U.S. at 133, 80 S.Ct. at 250,

> "The fact that the raft was not presently being used to repair respondent's barge is in our view immaterial. Petitioner was acting 'in the course of his employment' at the time of the injury, for at that moment he was doing the work of his employer pursuant to his employer's orders. No more is required by the Jones Act, as the *O'Donnell* case indicates, petitioner being a seaman who was injured as a consequence of the negligence of his employer." [9]

■ At least within reasonable limits this principle should work in reverse, to prevent longshoremen from being considered to be seamen because of merely incidental contacts with a vessel. "Seamen," as used in the Jones Act, and "members of the crew" as excluded from the Longshoremen's Act, are equivalent terms. Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. The concept, while perhaps not always effectively adhered to, is to separate harbor workers from persons whose livelihood is on the sea. Norton v. Warner Co., 1944, 321 U.S. 565, 570–571, 64 S.

Ct. 747; South Chicago Coal & Dock Co. v. Bassett, *supra* at 309 U.S. 256–257, 60 S.Ct. 544. *Compare* Rotolo v. Halliburton Co., 5 Cir., 1963, 317 F.2d 9, 13, cert. denied 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79, *with* Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 527–528. *See also* Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 779, 75 A.L.R.2d 1296. Melanson, in our opinion, clearly falls in the former category.

■ It is true that Melanson's relationship to the LOUISE was not a single episode, such as the court hypothesized in Long Island R.R. v. Lowe, *supra*. *See also* Wheeler Shipyard v. Lowe, E.D.N.Y., 1935, 13 F.Supp. 863, aff'd, 2 Cir., 82 F.2d 1022. Rather, it was customary for him to pilot her whenever he was aboard.[10] He was aboard, however, not because of attachment to the ship, but only because of the location of his work as a carpenter-foreman. Even while piloting, since he was travelling back from his island carpentry work he was still in the course of that employment. *Cf.* Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. In this dichotomy it may be questioned whether he was "aboard *primarily* to aid in navigation," Carumbo v. Cape Cod S.

---

9. In *O'Donnell v. Great Lakes Dredge & Dock Co.*, 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, the seaman was injured on shore, where he was doing work for the vessel.

10. The following appeared on cross-examination of Melanson:

Q. And there is no question in your mind that when you would take the boat LOUISE out into the harbor, perhaps during your work experience over a hundred or more times for the McKie Lighter Company, you would generally pilot that work boat?

A. If I took it myself, yes.

Q. Even if you had men under you— laborers, helpers—you would generally pilot the work boat LOUISE?

A. Yes, sir.

Q. And that would be within your years of employment, over a pe-

riod of time, say running about eight years up until the day of your accident, is that right?

A. That is right.

Q. And, in that sense, even though you went from island to island, or worked from shore to the work that you were doing down at Cuttyhunk or the piers in Boston, you would have that connection with the work boat LOUISE, isn't that right?

A. When we were working outside, we didn't have the boat LOUISE.

Q. Do you mean "outside," the ocean itself?

A. No, outside of the yard—outside Boston Harbor.

Q. As far as the piers and islands within Boston Harbor, would you have that connection with the work boat LOUISE in that you would be the pilot, most of the time?

A. Yes, sir.

S. Co., 1 Cir., 1941, 123 F.2d 991, 995 (emphasis suppl.), but even if he were we do not regard these occasional and brief dual-purpose episodes as permitting a finding of sufficient attachment to the LOUISE to be considered a member of her crew.

Since as a matter of law Melanson was not a master or a crew of a vessel within the exclusion clause of the act, the judgment of the district court is affirmed.