**NOBLE DRILLING COMPANY and Crawford & Company, Inc., Petitioners,**

**v.**

**Kathy DRAKE, Claimant, and U.S. Department of Labor, Benefits Review Board, Respondents.**

**No. 86–4140.**

United States Court of Appeals, Fifth Circuit.

July 28, 1986.

Rehearing and Rehearing En Banc Denied Aug. 26, 1986.

---

Mark J. Spansel, Joseph B. Guilbeau, New Orleans, La., for petitioners.

Joshua T. Gillelan, II, Atty., U.S. Dept. of Labor, Washington, D.C., Dawn Barrios, Carl W. Cleveland, New Orleans, La., for respondents.

Linda M. Meekins, Clerk, Dept. of Labor, Benefit Review Bd., Washington, D.C., for other interested parties.

Before WISDOM, DAVIS and JONES, Circuit Judges.

PER CURIAM:

The question presented in this appeal of a compensation award under the Longshore and Harbor Workers' Compensation Act is whether the record supports the determination that Phillip Drake's death was causally related to his employment. We conclude that the award is supported by substantial evidence and affirm.

I.

The facts are essentially undisputed. In October 1982, Phillip Drake was employed by Noble Drilling Company as a safety training coordinator. He had held this job for approximately five months, before which he had worked for Noble on various other, more strenuous, jobs for approximately four years. Drake's new position entailed extensive travel by helicopter to offshore drilling rigs where he inspected the rigs, showed safety films and spoke to groups of employees on subjects related to safety. The Administrative Law Judge found it likely that Drake was subjected to some stress in his employment associated with riding helicopters to work, speaking to groups of fellow employees and generally from the uncertainty related to beginning a new job.

On October 6, 1982, Mr. Drake took a twenty-minute helicopter ride to a drilling rig. Approximately thirty minutes after his arrival he began complaining of headaches; a few minutes later he became incoherent and suffered convulsions. Mr. Drake was transported by helicopter to a hospital where he arrived comatose. He died six days later without regaining consciousness. A CT scan of the brain indicated a severe left intracerebral and intraventricular hemorrhage, the cause of which was apparently a ruptured aneurysm.

Three physicians gave opinions to the ALJ. Dr. Carl F. Culicchia, a neurosurgeon, was one of the physicians who treated Mr. Drake during the six days immediately before his death. Dr. Culicchia concluded that Mr. Drake sustained a ruptured aneurysm which, in his opinion, was unrelated to occupational stress or other job hazards. Dr. Carl J. Dicharry, a cardiovascular specialist, examined the hospital records and reviewed the facts that transpired immediately before Mr. Drake's onset of symptoms and concluded that he could not associate the stress of decedent's work to the intracranial hemorrhage he sustained. Dr. William T. Garland, a cardiologist also reviewed Mr. Drake's medical and employment records, and the series of events that preceded Mr. Drake's collapse on the job. Dr. Garland testified that decedent probably suffered an aneurysm related to a congenital defect in a blood vessel of the brain. Dr. Garland testified that it was possible that decedent experienced job related stress which increased his blood pressure enough to contribute to the rupture of the aneurysm. The Administrative Law Judge found that Mr. Drake's death was compensable and this determination was affirmed by the Benefits Review Board.

II.

Section 20(a) of the Act provides that: "[I]t shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter." 33 U.S.C.

§ 920(a). We agree with the Benefits Review Board that the ALJ's determination that Mrs. Drake made out a prima facie case against Noble was supported by substantial evidence. The BRB, in *Kelaita v. Triple A Machine Shop*, 13 B.R.B.S. 326 (1977), succinctly explained the predicate the claimant must establish to make out a prima facie case and get the benefit of the presumption of a causal connection between the injury to the employee and his working conditions.

> Once claimant has met this dual burden of establishing that he has suffered harm and that the alleged accident in fact occurred or the alleged working conditions existed, the Section 20(a) presumption of causal connection (that the harm was caused by the accident or working conditions) applies. The presumption thus operates to link the harm with the injured employee's employment.

13 B.R.B.S. at 331. Mr. Drake's intracerebral hemorrhage on the job was not contested. We are persuaded that the testimony of Dr. Garland, together with the facts relating to the nature of Mr. Drake's employment, constitute substantial evidence to trigger the presumption that Drake's aneurysm was caused by his employment. To rebut this presumption of causation, the employer was required to present substantial evidence that the injury was not caused by the employment. *Swinton v. J. Frank Kelly, Inc.*, 554 F.2d 1075 (D.C.Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). When an employer offers sufficient evidence to rebut the presumption—the kind of evidence a reasonable mind might accept as adequate to support a conclusion—only then is the presumption overcome; once the presumption is rebutted it no longer affects the outcome of the case. *The Travelers Insurance Co. v. Belair*, 412 F.2d 297 (1st Cir.1969); *John W. McGrath Corp. v. Hughes*, 264 F.2d 314 (2d Cir.), *cert. denied*, 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959). ■ We agree with the Benefits Review Board that by introducing the opinions of Drs. Dicharry and Culicchia, Noble rebut-

ted the presumption of causation between the job related stress and the aneurysm. The opinions of these two physicians were unequivocal that Mr. Drake's intracranial hemorrhage was unrelated to his work. This is the kind of direct, concrete evidence that a reasonable mind could accept as adequate to negate any connection between Mr. Drake's job and his aneurysm.

■ If the presumption of compensability is successfully rebutted, as it was in this case, the presumption no longer affects the outcome of the case. The factfinder must then weigh all of the evidence in the record and resolve the fact at issue based on that evidence. In performing this task, the factfinder operates under the statutory policy that all doubtful fact questions are to be resolved in favor of the injured employee because the intent of the statute is to place the burden of possible error on those best able to bear it. *Young & Co. v. Shea*, 397 F.2d 185, *reh'g denied*, 404 F.2d 1059 (5th Cir.1968), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969). This statutory policy places a less stringent burden of proof on the claimant than the preponderance of the evidence standard which is applicable in a civil suit. *Strachan Shipping Co. v. Shea*, 406 F.2d 521 (5th Cir. 1969), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969).

■ Given the broad prerogatives of a factfinder to accept or reject particular medical opinions given in a case, the question in this case narrows to whether the nature of Mr. Drake's employment, the circumstances surrounding his collapse on the drilling rig together with Dr. Garland's opinion amount to substantial evidence that will support the ALJ's finding of a causal connection between Drake's employment and his intracranial hemorrhage.

Although we are satisfied that the claimant did not establish causation by a preponderance of the evidence, we are persuaded that the required causal connection is established by substantial evidence under the Longshore and Harbor Workers' Compensation Act. A closely analogous case, *Mid-Gulf Stevedores, Inc. v. Neuman*, 462 F.2d

185 (5th Cir.1972), is instructive on this question. In *Mid-Gulf,* the claimant, McCray, suffered a cerebral thrombosis or stroke while working with a longshoreman gang unloading cargo from a vessel. McCray had worked one and one-half days unloading the vessel and his duties were not strenuous. Three physicians testified that McCray's work had nothing to do with his cerebral thrombosis. One physician testified that such a causal relationship *could* exist. The Deputy Commissioner awarded compensation to McCray and the district court reversed on grounds that the award was not supported by substantial evidence.[1] We concluded that the award *was* supported by substantial evidence and reversed the judgment of the district court.

The authorities we have examined have not announced a clear standard to guide us in determining how much evidence must be adduced in support of causation before that evidence is considered "substantial." We are guided only by general principles such as doubtful fact questions are to be resolved in favor of the injured employee and the claimant need not establish his case by a preponderance of the evidence. Our holding in *Mid-Gulf* provides more concrete guidance. The proof offered by McCray in *Mid-Gulf* to establish causation was no more weighty than that offered by Mrs. Drake in this case. Following the broad general principles mentioned above, and our holding in *Mid-Gulf,* we conclude that the ALJ's finding of causation is supported by substantial evidence.

Accordingly, the award of the Benefits Review Board is AFFIRMED: the order of this court staying payment of the award pending appeal is DISSOLVED.

---

1. The opinion of the district court is reported at 333 F.Supp. 430 (E.D.La.1971).