891 F.2d 293
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UPPER PENINSULA SHIPBUILDING COMPANY and Underwriters
Adjusting Company, Petitioners,
v.
Douglas KUGLER and Benefits Review Board, Respondents.
 No. 89-3258.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1989.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arises under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. An administrative law judge determined that respondent Douglas Kugler was entitled to benefits under the Act, and the Benefits Review Board upheld the award of benefits. Mr. Kugler's employer and the employer's insurance carrier petition us for review of that determination on the ground that there was no substantial evidence to support the ALJ's findings that the employee's health problems were caused by his work for the employer and that the problems were completely disabling. Concluding that the ALJ erred in her analysis of the evidence, we shall remand the case for further consideration.
 
 
 2
 * Mr. Kugler is a welder who smoked a pack of cigarettes a day for 18 years. He quit smoking around 1979, and he began working as a welder for Upper Peninsula Shipbuilding Company in June of 1980.
 
 
 3
 Before he started work, and for the first year and a half of his employment, he had no breathing problems. By January of 1982, however, Mr. Kugler began to have trouble breathing and became winded walking up stairs. That month he began seeing Carl Lahti, M.D., a general practitioner. Dr. Lahti advised Mr. Kugler to change to a job in a dust free environment. Upper Peninsula did not reassign him to such a job.
 
 
 4
 Dr. Lahti referred Mr. Kugler to Steven J. Danek, M.D., a chest specialist. Dr. Danek advised Mr. Kugler to make every effort to avoid exposure to dust and smoke. Mr. Kugler left work in the summer of 1982. Since that time, in order to qualify for welfare, he has put in 50 hours per month mowing lawns or plowing driveways.
 
 
 5
 Mr. Kugler applied for workers' compensation benefits on the basis of his breathing problems. The medical evidence submitted in connection with the application comes from three sources: (1) Dr. Lahti's deposition; (2) two reports from Dr. Danek; and (3) a report from a Dr. Donald P. Schlueter. Dr. Lahti is a general practitioner not certified in any field. Dr. Danek is a specialist in respiratory disease and internal medicine. Dr. Schlueter, whom the ALJ recognized as the most qualified of the three, is Professor of Medicine and Head of Pulmonary Medicine at the Medical College of Wisconsin, and Chief of Medical Chest Service at the Milwaukee County Medical Complex. He is board certified in internal medicine and pulmonary disease.
 
 
 6
 Dr. Lahti stated in his deposition that Mr. Kugler's respiratory problems were caused by exposure to smoke and fumes at Upper Peninsula. Dr. Lahti concluded that Mr. Kugler was permanently disabled from performing "any type of physical labor requiring manual work."
 
 
 7
 Dr. Lahti testified that when patients have problems outside his expertise, he refers them to specialists. He referred Mr. Kugler to Dr. Danek because he felt the need of another opinion. When asked during his deposition about the significance of a "methacholine challenge test"--which Dr. Schlueter identified as one of two ways to establish a firm diagnosis of asthma--Dr. Lahti responded: "I haven't the foggiest idea. I'm not a pulmonary specialist."
 
 
 8
 Dr. Danek stated that Mr. Kugler had "mild asthma" which may have been "somewhat worsened" by dusty environments. He noted, however, that Mr. Kugler had "no significant pulmonary damage." Dr. Danek did recommend that Mr. Kugler make every effort "to avoid smoke or dust exposure of any fashion that may aggravate his asthma." In a later report, Dr. Danek clarified his views on the issues now contested: "I do not think his asthma was caused by occupational exposure, nor do I feel that he is disabled by his asthma." He stated that "it is conceivable that these fumes may minimally worsen preexisting condition," but he expressed the opinion that Mr. Kugler could return to work so long as his pulmonary function was monitored annually.
 
 
 9
 Dr. Schlueter, who examined Mr. Kugler in November of 1983 at the instance of petitioners, concluded that there was "No objective evidence of pulmonary disease." He explained that Mr. Kugler's spirometry, which was normal, and methacoline challenge test, which was negative, "virtually exclude[d] the diagnosis of asthma." He did state that Mr. Kugler may have had hyperreactive airway disease in the past, but that there was no evidence of such disease at the time of his examination.
 
 
 10
 The ALJ concluded that Mr. Kugler had pulmonary disease that (a) was caused by his work for Upper Peninsula and (b) left him totally disabled. As to causation, the ALJ relied upon the presumption under 33 U.S.C. § 920(a) that the claimant's problem came within the coverage of the Act. She found no evidence "that Claimant's exposure to fumes could not have caused Claimant to have an asthmatic reaction." As to the degree of disability, the ALJ fully credited Dr. Lahti's assessment and discounted Dr. Danek's. She observed also that Dr. Schlueter did not give an opinion on the degree of disability. (Given that Dr. Schlueter found no evidence of disease or disability, the absence of such an opinion is, of course, hardly surprising.) The Benefits Review Board affirmed in all respects.
 
 II
 
 11
 There are three steps to be taken in evaluating a claim for disability. First, it must be determined whether the claimant has sustained an injury. If so, a presumption arises that the injury is covered under the act. 33 U.S.C. § 920(a). ("In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary--(a) That the claim comes within the terms of this chapter.") Second, it must be determined whether the employer has presented substantial evidence to rebut the presumption. If not, the inquiry is at an end. If the employer has presented substantial evidence, however, the ALJ must answer a third question: does the evidence as whole support the claim? Noble Drilling Co. v. Drake, 795 F.2d 478, 481 (5th Cir.1986).
 
 
 12
 Here the ALJ found, and the petitioners do not dispute, that Mr. Kugler had a breathing problem. The opinions of Drs. Lahti and Danek support this conclusion. Therefore, a presumption arose under the statute that Mr. Kugler's employment caused his injury. Although the scope of the presumption is debatable, U.S. Industries/Federal Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 612 (1982), there is little doubt that it applies to causation. Sprague v. Director, OWCP, 688 F.2d 862, 865 (1st Cir.1982).
 
 
 13
 The next step is to determine whether the petitioners presented substantial evidence to rebut the presumption. Substantial evidence, for this inquiry as for others, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.
 
 
 14
 The rebuttal evidence presented here consists of the reports from Drs. Danek and Schlueter. Dr. Danek expressly stated that Mr. Kugler's condition was not caused by his employment. The doctor did admit, however, that the employment may have aggravated a preexisting condition. This admission may mean that Dr. Danek's report is not sufficient to rebut the presumption of causation. See Fulks v. Avondale Shipyards, Inc., 637 F.2d 1008, 1012 (5th Cir.), cert. denied, 454 U.S. 1080 (1981). In any event, we believe that Dr. Schlueter's report clearly is sufficient to rebut the presumption. Dr. Schlueter found that there was "no evidence" of pulmonary disease. Such a finding, if accepted, would necessarily negate the proposition that there was a permanent pulmonary condition caused by work-related exposure.
 
 
 15
 Once the presumption has been rebutted, it drops out of the case and no longer carries any affirmative weight. Whitmore v. AFIA Worldwide Ins., 837 F.2d 513, 515 (D.C.Cir.1988), citing Del Vecchio v. Bowers, 296 U.S. 280, 286 (1935). Although doubtful questions should still be resolved in favor of the claimant at this stage, the factfinder must "weigh all of the evidence in the record and resolve the fact at issue based on that evidence." Noble Drilling Co. v. Drake, 795 F.2d 478, 481 (5th Cir.1986).
 
 
 16
 The ALJ does not appear to have weighed all of the evidence in the case at bar, as opposed to relying on the § 920(a) presumption. The ALJ did not explicitly state that she was relying on the presumption, but the Review Board read her decision that way. So do we.
 
 
 17
 The petition for review is GRANTED, the decision and order of the Benefits Review Board is VACATED, and the case is REMANDED to the Board for further proceedings consistent with this opinion.