357 F.2d 888
 Margaret E. ENGEBRETSON, Widow of Clifford E. Engebretson,
Deceased and Gary Lynn Engebretson, Shirley Rae Engebretson
and Lori Ranae Engebretson, Minor Children of Clifford E.
Engebretson, Deceased, Plaintiffs-Appellants,
v.
R. C. ENOS, Deputy Commissioner of the United States
Department of Labor and The Travelers Insurance
Company and Midwest Dredging Company,
Defendants-Appellees.
 No. 15358.
 United States Court of Appeals Seventh Circuit.
 March 25, 1966.
 
 Alan G. Sumberg, Rockford, Ill., Donald J. Horowitz, Schroeter, Farris, Bangs & Horowitz, Seattle, Wash., for plaintiffs-appellants.
 Richard E. Eagleton, U.S. Atty., Springfield, Ill., Richard M. McMahon, Davenport, Iowa, Morton Hollander, Chief, Appellate Section, Dept. of Justice, Washington, D.C., for defendants-appellees The Travelers Ins. Co. and Midwest Dredging Co., Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, Iowa, of counsel.
 Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The widow and three minor children of Clifford E. Engebretson, deceased, (plaintiffs-appellants) applied for benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. 901 et seq. The decedent died on July 26, 1963 while in the employ of Midwest Dredging Company. The liability of the employer for compensation under said Act was insured by The Travelers Insurance Company.
 
 
 2
 After two hearings, R. C. Enos, Deputy Commissioner, Tenth Compensation District, Bureau of Employees' Compensation, United States Department of Labor, filed a Compensation Order in Case No. 4281-2 (Fatal), dated December 18, 1964, rejecting the claims of plaintiffs herein.
 
 
 3
 The Deputy Commissioner denied such claims on the ground 'the death of the employee did not arise out of and in the course of employment.'
 
 
 4
 Plaintiffs filed an action against the Deputy Commissioner, Travelers and Midwest in the United States District Court for the Southern District of Illinois, Honorable Frederick O. Mercer, presiding chief judge. In this action, plaintiffs sought a review of the Deputy Commissioner's decision.
 
 
 5
 The case was before the district court on the record made before the administrative agency. Each of the parties moved for summary judgment in its favor.
 
 
 6
 On this record, the district court found that the Deputy Commissioner's determination was supported by substantial evidence and should be affirmed.
 
 
 7
 The district court denied plaintiffs' motion for summary judgment and allowed the motions of the Deputy Commissioner, Midwest and Travelers for summary judgment. Judgment was rendered for defendants dismissing plaintiffs' complaint. From this adverse judgment, plaintiffs have appealed.
 
 
 8
 The distinguished district chief judge filed an unreported memorandum opinion in support of the judgment rendered. Since we find ourselves in complete agreement with the views expressed therein, we adopt such memorandum as the opinion of this court. The opinion is as follows:
 
 
 9
 'Clifford E. Engebretson, hereinafter referred to as the employee, died of a heart attack on July 26, 1963. Plaintiffs, who are his widow and children, filed their claim for compensation under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. 901, et seq. After a hearing upon the claim, the deputy commissioner for the 10th Compensation District of the Department of Labor denied the plaintiffs' claim upon his finding that the death of the employee did not arise out of and in the course of his employment by the defendant, Midwest Dredging Company. Plaintiffs filed this complaint to review that decision.
 
 
 10
 Each of the parties has moved for summary judgment in its favor. The cause is now before the court upon those motions.
 
 
 11
 Judicial review of an award of this nature is governed by well established principles which are stated as follows. Review is upon the record made before the administrative agency, and the burden is upon the plaintiffs to show that the evidence of record does not support the decision of the deputy commissioner. Southern Stevedoring Company v. Henderson, 5 Cir., 175 F.2d 863. The findings of fact of the commissioner may not be disturbed by the court if they are supported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; American Nat. Red Cross v. Hagen, 7 Cir., 327 F.2d 559. The logical inferences drawn from the evidence by the commissioner must be taken as established fact and are not reviewable judicially, O'Leary v. Brown-Pacific-Maxon, Inc. supra; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, even though the evidence permits conflicting inferences to be drawn. Del Vecchio v. Bowers, supra; Southern Stevedoring Co. v. Henderson, supra; Delta Stevedoring Co. v. Henderson, 5 Cir., 168 F.2d 872.
 
 
 12
 On this record, if the commissioner's finding that the employee's death did not arise out of and in the course of his employment is supported by substantial evidence the commissioner's decision must be sustained.
 
 
 13
 The evidence presented before the commissioner is substantially free of conflict.
 
 
 14
 The employee was 44 years of age at the time of his death. At that time he was an employee of the defendant, Midwest Dredging Company, working aboard a vessel upon the navigable waters of the Mississippi River. The defendant, Travelers Insurance Company, was the compensation insurance carrier for Midwest.
 
 
 15
 The employee had worked for Midwest since the Fall of 1952, and he was at the time of his death superintendent of Midwest's dredging operations involving the mentioned vessel. Although his duties were supervisory in character, the employee was a working superintendent. It was his custom and practice to work along with his crew upon any work to be done, including the performance of heavy manual labor.
 
 
 16
 On July 26, 1963, the employee reported to work at approximately 6:30 a.m. The record contains no evidence relative to the duties performed by him on that day until approximately 12:00 noon. At about 12:00 noon, the employee left the work site and drove a pick up truck owned by Midwest approximately 45 miles to the City of Davenport, Iowa, where he picked up two sheets of steel which weighed approximately 500 pounds each. The sheets of steel were loaded onto the truck by a crane at Davenport at approximately 1:30 p.m. At approximately 3:00 p.m., the sheets of steel were transferred by the employee and another Midwest workman from the truck to an anchor barge for transportation from a landing to the dredge site approximately three miles downstream from the landing. A hoist aboard the barge was used to transfer the steel from the truck to the barge. At the dredge site, the steel was placed in position for the construction of a pontoon then being constructed by the crew. The positioning of the steel on the pontoon required substantial manual labor by the employee and two members of his crew in the lifting, pushing and sliding of the steel sheets into position by the use of pinch bars and hand tools. The steel plates were positioned on the pontoon prior to 3:30 p.m. When the second shift came aboard the dredge at the latter time certain members of that shift observed the employee engaged in welding steel cross bars and braces of approximately fifty pounds weight each onto the pontoon structure. By 4:00 p.m. the employee had ceased his welding operation. At that time he had coffee with certain members of the second shift and spent approximately the hour thereafter talking to the crew and instructing them as to the work to be done. At a time between 5:00 and 5:30 p.m. he boarded an outboard motor boat, powered by an eighteen horsepower Evinrude motor, for the purpose of transporting himself upstream to the landing and, ultimately, to his home. The motor was difficult to start, and the employee was required to pull the starter cord some eight to ten times before the motor started. He then left the dredge site and started his journey upstream. He was last seen alive approximately 1000 feet upstream from the dredge, seated in his boat, at which time and place he was observed to have turned and waved to the crew aboard the dredge.
 
 
 17
 On July 28, 1963, the employee's body was found floating in the river near the dredge. His boat was found approximately 2,500 feet upstream from the dredge, aground on the Illinois bank of the river, with the propeller pin sheared and the gasoline tank empty.
 
 
 18
 The coroner's physician who performed an autopsy on the body found that the employee's death was caused by an obturator thrombosis of the left coronary artery. The physician further found that the employee was afflicted with pre-existing atherosclerosis, or hardening of the arteries, of several years duration. The employee was not under the care of a physician prior to his death and he was not known to be the victim of any cardiovascular disease or limitation. He had never made any symptomatic complaints to his family or any of his fellow employees, either on the day of his death or at any other time.
 
 
 19
 Finding the evidentiary facts essentially as hereinabove summarized, the commissioner found that the employee's death did not arise out of and in the course of his employment. I am convinced that the evidence of record substantially supports that finding. The expert testimony as to causation is essentially free from conflict as is the occurrence evidence.
 
 
 20
 Dr. Hendricks, a specialist in internal medicine called as a witness by Midwest and its insurance carrier, stated that there was no causal connection between the employee's employment activities on July 26 and his subsequent death. He testified that atherosclerosis is a gradual process which has the effect of narrowing and partially blocking the interior of the blood vessels, and that a blood vessel so affected can readily become blocked, or occluded, often times without prior symptomatic warning; that, with a blood vessel thus partially blocked, a blood clot may form very rapidly completely blocking the flow of blood therethrough; that when an occlusion occurs near the heart in a vessel which nourishes the heart death is practically instantaneous, with the mechanism of death being the involvement of the muscle controlling the heart beat causing either acute ventricular fibrillation or acute cessation of the heart; that the work which one does in his everyday activities does not hasten the atherosclerosis process; that physical activity, so long as it is not a massive effort in activities in which a person is not accustomed, would if it had any effect at all, tend to lessen the likelihood of thrombosis; that it was his opinion that the activities of the employee on the day of his death had no causal precipitating effect upon the massive heart seizure which later he suffered; that the fact that the employee had suffered the massive thrombosis immediately after completing a day's work was wholly coincidental; and that the thrombosis could as readily have occurred at the time when it did had the employee been in bed for days and engaged in no activity whatsoever.
 
 
 21
 The coroner's physician, Dr. Martin, testified that he had conducted an exploratory examination of the chest cavity of the employee on July 28, 1963; that the employee's lungs contained no water; that he opened all cavities of the heart and its coronary arteries and found a blood clot which totally occluded the left coronary artery near the mouth of the artery; that the left coronary artery is the most important of the two arteries feeding the heart; that death from the occlusion was inevitable and virtually instantaneous because the point of occlusion was merely centimeters removed from the mouth of the important artery involved; that it was his opinion that there was no causal connection between the fatal attack and the employee's activities on that day, and that the attack could as readily have occurred had the employee been sleeping or otherwise inactive on that day; that such blood clots can occur in just a matter of seconds bringing certain death when lodged in the position where this clot occurred; and that the employee's work had nothing to do with the fatal attack.
 
 
 22
 Dr. Fisher, a witness for the plaintiff, testified in response to a hypothetical question that there was a possibility of a causal connection between the employee's activities on July 26 and the subsequent heart attack, but that he could not state that there was a probability of such a causal connection between the two events.
 
 
 23
 It is apparent that the commissioner had before him a body of evidence almost devoid of conflict. Even the conflict between the testimony of the several experts was more apparent than real. Though each had stated the opinion that there was no causal relationship between the work activities and the later fatal attack, both Dr. Hendricks and Dr. Martin testified on cross examination that it could not be said that there was no possibility of such a relationship between the two events. Dr. Fisher, on the other hand, stated that it was possible that a causal connection did exist, but that he could not say that there was a probability of any such causal connection. Thus, rather than there being a conflict in the expert testimony there was a difference only in the emphasis placed upon various hypotheses by the several experts. In any event, the commissioner has conclusively resolved any conflict in the evidence in his decision.
 
 
 24
 One other evidentiary fact needs to be mentioned. The employee was on call 24 hours out of the day. Mrs. Engebretson testified that the hours which her husband worked varied substantially from time to time as superintendent, but that he had been working longer hours daily for a short period of time prior to his death. Plaintiffs strees that testimony as illustrative of the error of the commissioner's decision. That emphasis is misplaced. The commissioner considered that testimony with the other evidence of record and his judgment as to the weight to be accorded thereto is conclusive.
 
 
 25
 I think that both Vinson v. Einbinder, 113 U.S.App.D.C. 246, 307 F.2d 387, and Todd Shipyards Corp. v. Donovan, 5 Cir., 300 F.2d 741, are readily distinguishable from the case at bar.
 
 
 26
 Both substantive and procedural distinctions are obvious so far as the latter case is concerned. Perhaps the procedural, namely, the fact that the commissioner resolved the conflicts in the evidence in favor of the employee, is the more important of the two. The employer was in the same position in which these plaintiffs now occupy, faced with the presumptive validity of the commissioner's findings of ultimate fact. Substantively, it appears that the employee there involved suffered a heart attack while engaged in his employment, following his working for hours with a cutting torch in confined quarters, deficient in oxygen supply, on a project which involved unusually strenuous exertion on his part.
 
 
 27
 In Vinson, the employee while engaged in his duties for his employer died instantly of coronary insufficiency, secondary to coronary sclerosis. At the time of his death, the employee was performing work, the performance of which frequently required the efforts of two men. Though there was some conflict in the medical testimony, that conflict really turned upon the various doctor's opinions as to whether the work being done was unusually strenuous, since all agreed that unusually strenuous activity could have, or probably would have, precipitated the attack. Upon the record there made, the commissioner's finding that there was no causal relationship between the employment and the fatal attack was reversed.
 
 
 28
 A distinction in the nature of the heart attacks involved must also be recognized. In fact, that distinction is pointed up by the testimony of Dr. Fisher in this record. On cross examination he described coronary insufficiency, secondary to atherosclerosis, as the condition which occurs when, from strenuous exertion or other cause, the rate of heart beat is increased, requiring an increased supply of blood to nourish the heart muscle, and the vascular artery is so restricted that the flow of blood is insufficient to supply the heart's requirements of oxygen. A thrombosis on the other hand has no necessary relationship to physical exertion.
 
 
 29
 In this case, the heart attack followed a day in which the employee had engaged for a part of his time in heavy manual labor, but that labor was not essentially different from the work which he performed daily. The heart attack followed a period of relative inactivity on his part, namely the time after approximately 4:00 p.m. The only physical exertion shown by the record during that period was the pulling of the starter cord of the motor and the exertion necessary to operate the boat while seated therein. Upon the record, I cannot conclude that there is no substantial evidence to support the commissioner's finding.
 
 
 30
 Plaintiffs' motion for summary judgment is denied.
 
 
 31
 The motion of the deputy commissioner for summary judgment and the motion of Midwest and Travelers for summary judgment are allowed. Judgment is ordered for the defendants dismissing plaintiffs' complaint.'
 
 
 32
 On the authority of such opinion, the judgment appealed from is in all respects affirmed.
 
 
 33
 Affirmed.