**GARVEY GRAIN COMPANY and United Fire Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS and Max Cuellar, Respondents.**

No. 79–2498.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 20, 1980.
Decided Jan. 5, 1981.

Mark A. Braun, Braun, Lynch & Smith, Ltd., Chicago, Ill., for petitioner.

Stanley Eisenstein, Chicago, Ill., for respondents.

Before CUMMINGS, Circuit Judge, BAUER, Circuit Judge, and TEMPLAR, Senior District Judge.*

* George Templar, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

1. Section 902(3) (33 U.S.C. § 902(3)) reads in pertinent part:
  "(3) The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, ..."
  Section 903(a) (33 U.S.C. § 903(a)) reads in pertinent part:
  "(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)...."

2. Section 914(e) (33 U.S.C. § 914(e)) reads as follows:

PER CURIAM.

This is an appeal from a decision of the Benefits Review Board affirming that the appellee Max Cuellar (Cuellar) was an employee of the appellant Garvey Grain Company (Garvey) under the Longshoremen's and Harbor Workers' Compensation Act at the time of a serious injury he suffered October 15, 1974.

An award of temporary total disability was made by the Administrative Law Judge (ALJ), and the final determination of the extent of permanent disability remains to be made.

Garvey raises three issues in the appeal:

1. Does the record support the findings below that the employment of Cuellar satisfied the situs and status requirements of Section 902(3) and Section 903(a) of the Longshoremen's and Harbor Workers' Act?[1] 2. Was a Section 14(e) payment charge (33 U.S.C. § 914(e)) properly assessed against the employer for late payment of compensation?[2] 3. Do provisions of 20 CFR, § 702.349 mandate that the decision of the ALJ be reversed and remanded because of inordinate delay?[3]

The principal issue we must consider is whether Cuellar was an employee within

"(e) If any installment of compensation payable without an award is not paid within fourteen days after it becomes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subdivision (d) of this section, or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment."

3. 20 CFR § 702.349 reads as follows:
  "The administrative law judge shall, within 20 days after the official termination of the hearing, deliver by mail, or otherwise, to the office of the deputy commissioner having original jurisdiction, the transcript of the hearing, other documents or pleadings filed with him with respect to the claim, together with his signed compensation order...."

the meaning of the Act. If, at the time of his injury, he was an employee within the meaning of the Act, he is entitled to the benefits and protections it provides. If, on the other hand, he was not such an employee, he would not be entitled to its benefits. Both the ALJ and the Benefits Review Board determined from all the evidence as a whole that Cuellar was an employee and that his work met the status and situs requirements of the Act.

▪ Appellant Garvey insists that the record does not support the "status" requirement of jurisdiction because Cuellar was not a person engaged in maritime employment at the time of his injury. To determine this issue, we should consider certain guidelines established in cases of this kind. We are reminded that the Act should be liberally construed in light of its remedial nature and humanitarian purposes. See *Reed v. The Yaka*, 373 U.S. 410, 413, 83 S.Ct. 1349, 1352, 10 L.Ed.2d 448 (1963). Section 20 of the Act creates a presumption directing that in any proceeding under the Act it shall be presumed, in the absence of substantial evidence to the contrary, that the claim of the injured workman comes within the provisions of the Act.[4] However, this provision is limited. It comes into play only after a claimant has shown that this chapter is applicable to the case. *Motteler v. J. A. Jones Construction Co.*, 457 F.2d 917, 920 (7th Cir. 1972).

Additionally, Garvey contends that the place at which Cuellar suffered his injury does not meet the "situs" requirement of Section 903(a) because it was not on navigable waters of the United States. Instead, he was repairing or reconditioning screw conveyors in a portion of the mill where grain products were made into pellets to be stored in various silos until the owner of the product determined to whom the pellets would be shipped. Navigable waters include an adjoining area customarily used by the employer in loading, unloading, repairing or building a vessel.

We have held that review of an award of this nature is upon the record made before the administrative agency, that the burden is upon the appellant to show that the evidence of record does not support the decision of the deputy commissioner (an office now held by an ALJ), and that the logical inferences drawn from the evidence by the commissioner must be taken as established fact and are not reviewable judicially even though the evidence permits conflicting inferences to be drawn. *Engebretson v. Enos*, 357 F.2d 888, 890 (7th Cir. 1966).

▪ In deciding this appeal, the Act is to be liberally construed in favor of injured workers and an award should not be set aside so long as it is supported by substantial evidence on the record, considered as a whole, and so long as there is a reasonable legal basis for the Board's conclusions. *Banks v. Chicago Grain Trimmers Assn.*, 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968); *Continental Insurance Co. v. Byrne*, 471 F.2d 257 (7th Cir. 1972), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1767, 32 L.Ed.2d 117 (1972); *Strand v. Hansen Seaway Service, Ltd.*, 614 F.2d 572, 574 (7th Cir. 1980); *General Dynamics Corp. v. Director OWCP*, 585 F.2d 1168, 1170 (1st Cir. 1978); *Jacksonville Shipyards v. Perdue*, 539 F.2d 533, 541 (5th Cir. 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977).

The Act provides that decisions of the ALJ shall be affirmed by the Board if supported by substantial evidence.

"The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record taken as a whole." 33 U.S.C. § 921(b)(3).

This is a very clear and strong statement of Congressional intent that the findings of the ALJ are to be given "conclusive" weight if supported by substantial evidence.

---

4. Section 20 (33 U.S.C. § 920) reads in pertinent part:

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter."

See *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003 (5th Cir. 1978); *Jacksonville Shipyards v. Perdue, supra,* at 541.

While appellants vigorously argue that the evidence in the record required a conclusion contrary to that reached by the ALJ and on review by the Benefits Review Board, we conclude that our consideration of the issues presented is limited to the questions of whether the law judge's determination affirmed by the Benefits Review Board comes within the jurisdiction intended by the Act and whether it is supported by substantial evidence, is not irrational, and is in accordance with law. . See, *O'Keefe v. Smith Associates*, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965).

■ Substantial evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict where the conclusion sought to be drawn from it is one of fact for the jury. The test is not whether evidence admitted in court preponderates against the administrative decision, and it is immaterial whether the court would reach the same conclusion on the facts as the administrative agency. *NLRB v. Fant Milling Co.*, 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959).

A summary of the evidence considered by the ALJ and by the Board of Review in granting and upholding the award to Cuellar, the injured workman, discloses that Garvey operates a grain facility in which Cuellar worked. The facility is bounded on one side by the main dock used for loading and unloading ships and on the other side by a slip used for loading barges. Grain comes into the facility by ship, barge, truck or rail, is processed into pellets and is stored, or merely stored to await shipment, again either by water or land. The duties of Cuellar for Garvey included general maintenance, maintenance of equipment in the grain facility such as belt conveyors used to move grain around the facility to the scale where it was weighed prior to shipment, plus the repair of equipment on barges and ships. He boarded barges to jack up derailed barge covers so that the barge could be opened up for unloading or closed after loading. Whenever a barge came in he always went on it because there was always something wrong. He repaired "marine legs," bucket conveyors used to load or unload barges. In all such instances, he was ordered by the dock foreman, a Garvey employee, to go aboard and "check out" the marine leg to see what was wrong with it. He would change pockets or replace pulleys for cable. In addition to boarding barges for repairs, he often boarded ships because almost every ship that came in had some problems. He would be instructed to go aboard to check the equipment and to repair it. In connection with the ship loading process, Cuellar was sometimes called upon to repair the loading spout through which grain and pellets flowed from the grain facility onto the ship. The spout was attached to the shipping bin, where the grain or pellets were taken before loading on the ship. Only a millwright, such as Cuellar, repaired the loading spout. While on board ships, he would change the receptacles on the trimming machine, which are used for loading grain or pellets, or he would work on starters.

■ We conclude that the record discloses substantial evidence to support the finding that Cuellar was engaged in "maritime employment" by virtue of the work he did in performing his overall duties for his employer in repairing the loading spout and the marine legs, moving barge hatch covers and general maintenance of the grain facility. These functions are an integral part of the loading and unloading of vessels and are directly connected with and are vital to the movement of maritime cargo on navigable waters. Cf. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 271, 97 S.Ct. 2348, 2361, 53 L.Ed.2d 320 (1977), where the court held that in adopting an occupational test that focuses on loading and unloading, Congress anticipated that some persons who work only on land would receive benefits under the 1972 Act. In the recent case of *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979), the Supreme Court said:

"We believe that § 2(3)'s explicit use of the terms 'longshoreman' and 'other person[s] engaged in longshoring operations' to describe persons engaged in maritime employment demonstrates that workers doing tasks traditionally performed by longshoremen are within the purview of the 1972 Act.... Instead, the crucial factor is the nature of the activity to which a worker may be assigned. Persons moving cargo directly from ship to land transportation are engaged in maritime employment. [*Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 267 n. 28, 97 S.Ct. 2348, 2358 n. 28, 53 L.Ed.2d 320 (1977)]. (Footnote omitted.) A worker responsible for some portion of that activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process." 444 U.S. at 82–83, 100 S.Ct. at 337.

Coverage is established if a worker performs tasks that are an integral part of the loading or unloading process. The "moment of injury" test is no longer the test to determine the status of an employee under the Act. In *Northeast Marine Terminal Co. v. Caputo, supra,* the Supreme Court, in discussing the purpose of the Act as it was amended in 1972, said at 273, 97 S.Ct. at 2361:

"Both the text and the history demonstrate a desire to provide continuous coverage throughout their employment to these amphibious workers who, without the 1972 Amendments, would be covered only for part of their activity."

In order to avoid shifting or fortuitous coverage, the court held that Caputo was covered since he spent at least some of his time in indisputably longshoring operations. *Id.,* at 273–274, 97 S.Ct. at 2361. Later, the court noted Congress's obvious desire to cover longshoremen whether or not their particular task at the moment of injury is clearly a longshoring operation. *Id.,* at 276, 97 S.Ct. at 2363.

This case, which is applicable to the situation before us, determined that a workman is covered if he spends at least some of his time in indisputably longshoring operations.

"... when Congress said it wanted to cover 'longshoremen,' it had in mind persons whose employment is such that they spend at least some of their time in indisputably longshoring operations and who, without the 1972 Amendments, would be covered for only part of their activity." 432 U.S. at 273, 97 S.Ct. at 2361.

The appellant Garvey sets out considerable testimony in support of its view that Cuellar was not a covered employee at the time of his injury. The ALJ chose to accept the workman's evidence in a sharply contested case. This court will not retry the case. We only can decide whether there was sufficient evidence in the record to satisfy the requirement that the findings of fact made by the ALJ are supported by substantial evidence. We hold that there was sufficient evidence that Cuellar was indeed an employee of Garvey at the time of his injury and that Garvey was an employer within the meaning of 33 U.S.C. § 902(4), Section 2(4) of the Act. The evidence and the reasonable inferences that may be drawn therefrom support the conclusion that the requirements of "situs" and "status" as a basis for jurisdiction under the Longshoremen's and Harbor Workers' Compensation Act were satisfied.

### *The Assessment of the 10% Penalty*

The order of the ALJ directed that appellants should pay to Cuellar, pursuant to 33 U.S.C. § 914(e), an additional amount of compensation equal to 10% of the balance of all accrued compensation payable to the claimant Cuellar. Garvey contends that the assessment of additional compensation is not in accordance with law in that the imposition of the penalty is an unconstitutional deprivation of property without due process of law. The argument is advanced that the penalty was assessed without notice or an opportunity to be heard on the issue and that the failure to provide for notice and an opportunity to be heard results in a denial of due process.

It is noted that the decision of the ALJ was filed with the Office of the Deputy

Commission, Tenth District Office, on November 15, 1977, and that on the same day the decision was mailed to the parties. Appellants do not contend that they did not receive it. They were then bound to know that if the payment of installments of compensation was not commenced within fourteen days, a 10% penalty would attach. This statutory provision was mandatory and was designed to encourage prompt payment of compensation to injured workers.

■ The contention that a good faith belief that jurisdiction under the Act did not exist is without merit. The Act specifically provides that an employer has two methods by which it can avoid the payment of the penalty. One method is by giving a notice of its intent to controvert the right to compensation, under 33 U.S.C. § 914(d), on or before the fourteenth day after it has knowledge of the injury. No such notice was ever given by Garvey. The other method is to obtain relief from the deputy commissioner after showing that the employer had no control over the prevailing circumstances. No attempt has been made by Garvey to obtain relief from the deputy commissioner. We observe that the Board has held that, since the additional assessment of compensation under the Act is mandatory, such showing may be considered at any time. *Nulty v. Haller Marine Fabricators, Inc.*, 1 BRB 7437, BRB No. 74–179 (May 2, 1975). The application of the penalty provision of the Act and the clear provisions for its avoidance on the part of the employer do not form a basis for determining that its implementation constitutes a denial of due process. We are satisfied with the rule established in *Jones v. Newport News Shipbuilding & Dry Dock Co.*, 5 BRBS 323, BRB No. 76–320 (June 4, 1977), aff'd, 573 F.2d 167 (4th Cir. 1978), *cert. denied*, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978). Since Garvey failed to compensate Cuellar or to file a notice controverting his right to compensation after learning of his injury and did not show that nonpayment was due to conditions beyond its control, imposition of the 10 percent penalty is mandatory under the statute. *See Newport News Shipbuilding & Dry Dock Co. v. Graham*, 573 F.2d 167, 171 (4th Cir. 1978). Under the decisions of *L'Hote v. Crowell*, 286 U.S. 528, 52 S.Ct. 499, 76 L.Ed. 1270 (1932) and *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) the Longshoremen's and Harbor Workers' Act is constitutional.

### The Issue of Inordinate Delay

■ Appellants contend that, because the decision of the ALJ was issued some nineteen months after the close of proofs following the hearing, the decision of the Benefits Review Board upholding the award made by the ALJ must be reversed and the cause remanded to a different ALJ under the provisions of 20 CFR § 702.349. This regulation must not be considered as mandatory. It contains no provision which requires vacating an award made more than twenty days after official termination of the hearing before the ALJ, nor do its provisions require a rehearing. It is simply a regulation intended to encourage the expedition of decisions but without any penalty if the time schedule is not met. We hold that the time limit contained in the regulation does not require the vacation of the decision of the ALJ, affirmed by the Benefits Review Board. We approve the rule stated in *Newport News Shipbuilding v. Director, Workers' Compensation*, 594 F.2d 986, 987 (4th Cir. 1979). Administrative delay may not adversely affect the rights of a claimant.

There being a reasonable basis for the conclusions of the Benefits Review Board in sustaining the Findings and Conclusions of the Administrative Law Judge, the decision of the Board is affirmed and the case is remanded for a determination of the unresolved issues pending before the Administrative Law Judge.

Affirmed.