**Mabel SPRAGUE (Widow of Frederick Sprague), Claimant-Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent**

**and**

**Bath Iron Works Corporation, Respondent**

**and**

**Commercial Union Insurance Company, Respondent.**

**No. 81–1520.**

United States Court of Appeals, First Circuit.

Argued June 2, 1982.

Decided Sept. 24, 1982.

Patrick N. McTeague, Brunswick, Maine, with whom McTeague, Higbee & Libner, Brunswick, Maine, was on brief, for claimant-petitioner.

Stephen Hessert, Portland, Maine, with whom Norman & Hanson, Portland, Maine, was on brief, for respondents.

Before CAMPBELL and BREYER, Circuit Judges, PETTINE, Chief District Judge.*

PETTINE, Chief District Judge.

Mabel Sprague, widow of Frederick Sprague, appeals the 2–1 decision of the Benefits Review Board [hereinafter "Board"] affirming an administrative law judge's [hereinafter "ALJ"] denial of disability and death benefits under the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. §§ 908,[1] 909[2] [hereinafter the "Act"]. The Board sustained the ALJ's

---

* Of the District of Rhode Island, sitting by designation.

1. 33 U.S.C. § 908 provides compensation to an employee covered by the statute, see id. § 903, for "permanent total disability," "permanent partial disability," and "temporary total disability." Id. § 908(a)–(c). The claimant in this case is apparently suing, in part, for sums allegedly owing to her husband under § 908 at the time of his death because of a "permanent total disability" arising out of his employment. See note 3 infra for a definition of "disability" as used in this statute.

2. The claimant seeks death benefits under 33 U.S.C. § 909. Section 909 provides for payment of compensation to those surviving an employee who was permanently and totally disabled at the time of death, even though (as in this case) the employee's death was not due to a work-related injury. See 33 U.S.C. § 909.

finding that the decedent's disability, which was not the cause of his death, was not work-related, and thus that the decedent's widow was not entitled to benefits under the Act. *See id.* § 902(2), (10).[3] This Court has jurisdiction over the claimant's appeal pursuant to 33 U.S.C. § 921(c). For the reasons that follow, this Court affirms the Board's decision.

### Facts

Frederick Sprague worked for Bath Iron Works Corp. [hereinafter "BIW"] in its machine shop from sometime in the early 1970's until August 9, 1975.[4] On July 17, 1975 Mr. Sprague accidently struck and bruised his left leg while operating a rigging machine at BIW. At the hearing before the ALJ, Mrs. Sprague testified that she observed her husband's leg on the day following this injury. She stated that she saw numerous cuts and bruises on the leg, none of which were deep. However, she did recall seeing "raw flesh."

Approximately six days after his injury, Mr. Sprague sought treatment from BIW's medical director, Dr. Dominici. Dr. Dominici is a general surgeon specializing in vascular work. Dr. Dominici testified that, upon examining Sprague's left leg, he observed no open wounds or cuts. Furthermore, x-rays taken of Sprague's entire left leg on August 14, 1975 did not reveal the onset of osteomyelitis, a bacterial bone infection which caused Sprague's disability in this case.

On August 18, 1975 Mr. Sprague was examined in a hospital by Dr. Evans, Sprague's family doctor and an internist. Dr. Evans discovered that Sprague's great toe on his right foot was ulcerated. Dr. Evans testified at his deposition that Sprague's diabetic condition was responsible for the ulcer on the right toe. A culture taken from this ulcer disclosed the presence of staphylococcus aureus [hereinafter "staph"], a type of bacteria. However, Evans' medical notes do not indicate that Sprague had open wounds or cuts on his left leg at this time.

Dr. Evans referred Sprague to Dr. Giustra, an orthopedic surgeon. On October 10, 1975, Dr. Giustra performed surgery on Sprague's right toe. Giustra diagnosed the toe condition as a soft-tissue infection not involving the bone. However, x-rays taken by Giustra in October revealed extensive osteomyelitis in the fibula of Sprague's left leg. On October 14, 1975 Giustra amputated Sprague's left leg below the knee because of the osteomyelitis. Some months later, Mr. Sprague died from an accidental gunshot wound.

The critical factual issue in this case is whether the osteomyelitis of Sprague's left leg resulted from work-related injuries to that leg, or from a non-work-related infection in the ulcerated toe on his right leg.[5] Osteomyelitis may occur in two ways: (1) through direct "innoculation" of a bone with bacteria that has entered the skin through an open wound located near the bone; and (2) through transmission of bacteria through the blood stream from one part of the body to a bone in another part of the body. The claimant contends that Sprague's osteomyelitis was caused by entry of staph bacteria through wounds on his left leg received at BIW in July 1975. BIW, however, contends that staph entered Sprague's body through the non-work-relat-

---

**3.** A "disability" compensable under the Act is defined as "incapacity because of *injury* to earn the wages which the employee was receiving at the time of *injury* in the same or any other employment." 33 U.S.C. § 902(10) (emphasis added). The injury producing the disability must be suffered while working. "Injury" is defined as

accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally

or unavoidably results from such accidental injury, and includes an injury caused by willful act of a third person directed against an employee because of his employment.

*Id.* § 902(2).

**4.** Sprague also worked intermittently for BIW from 1936 to sometime in the early 1970's.

**5.** The parties agree that the ulcer on Sprague's right great toe was not caused by his employment activities.

ed ulcer on his right toe and traveled through his blood stream to his left leg.

The ALJ found that Sprague's osteomyelitis was blood-borne and not due to work-related injuries to his left leg. The Board affirmed 2–1, concluding that the ALJ's findings on causation were supported by substantial evidence.[6]

## Discussion

### I. Substantiality of Evidence

33 U.S.C. § 920(a) provides that "it shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat the claim comes within the provisions of this [Act]. ..." The precise coverage of this presumption is debatable. *United States Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers' Comp. Programs,* —— U.S. ——, 102 S.Ct. 1312, 1316, 71 L.Ed.2d 495 (1982). However, the presumption clearly applies to the causal "nexus between an employee's malady and his employment activities." *Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d 264, 269 (D.C. Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982) (quoting *Swinton v. Kelley,* 554 F.2d 1075, 1082 (D.C. Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976)). Thus, until the employer introduces substantial evidence to the contrary, § 920(a) presumes that an employee's disability is work-related.

■ However, once an employer bears his burden of going forward with substantial evidence of non-work-relatedness, the presumption "falls" out of the case. *Travelers Insurance Co. v. Belair,* 412 F.2d 297, 301 n. 6 (1st Cir. 1969). *Accord Volpe v. Northeast Marine Terminals,* 671 F.2d 697, 700 (2d Cir. 1982); *Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d at 267; *Walker v. Universal Terminal and Stevedoring Corp.,* 645 F.2d 170, 173 (3d Cir. 1981). *See Del Vecchio v. Bowers,* 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229 (1935) (discussing presumption in 33 U.S.C. § 920(d)). The presumption does *not* con-

stitute affirmative evidence. *Walker v. Universal Terminal and Stevedoring Corp.,* 645 F.2d at 173. *See Del Vecchio v. Bowers,* 296 U.S. at 286, 56 S.Ct. at 193.

Thus, resolution of Mrs. Sprague's claim for benefits under the Act requires a two-part analysis. *Walker v. Universal Terminal Stevedoring Corp.,* 645 F.2d at 173. First, the Court must determine whether BIW came forward with substantial evidence to rebut the presumption of compensability under § 920(a). Second, if the presumption was successfully rebutted, the Court must then ask whether, on the record as a whole and without reference to the presumption, there is substantial evidence to support the ALJ's fact findings. *Graziano v. General Dynamics Corp.,* 663 F.2d 340, 341 (1st Cir. 1981); *Bath Iron Works Corp. v. White,* 584 F.2d 569, 573 (1st Cir. 1978); *Travelers Insurance Co. v. Belair,* 412 F.2d at 301 n. 6. In other words, the Court must determine whether or not "the Board adhered to the substantial evidence standard in its review of [the] factual findings [made] by the ALJ." *Graziano v. General Dynamics Corp.,* 663 F.2d at 341.

■ "Substantial evidence," for purposes of determining both whether the employer has rebutted the presumption of compensability and whether the ALJ's findings are supported on the record as a whole, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parsons Corp. of California v. Director, Office of Workers' Comp. Programs,* 619 F.2d 38, 41 (9th Cir. 1980) (evidence needed to rebut presumption); *Diamond M. Drilling Co. v. Marshall,* 577 F.2d 1003, 1006 (5th Cir. 1978) (evidence needed to support ALJ's findings). *See NLRB v. Columbian Enameling and Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 504, 505, 83 L.Ed. 660 (1939) (action under national labor laws); *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir. 1981) (social security disability benefits). Thus, "substantial evidence" means

---

**6.** One member of the Board voted to vacate the ALJ's decision and to remand because of the ALJ's refusal to permit discovery of certain correspondence. *See* pp. 868–869 *infra.*

more than a scintilla of evidence, but less than a preponderance. *Garvey Grain Co. v. Director, Office of Workers' Comp. Programs,* 639 F.2d 366, 370 (7th Cir. 1981) (*per curiam*); *Diamond M. Drilling Co. v. Marshall,* 577 F.2d at 1006. In reviewing for substantial evidence it is immaterial that the facts permit diverse inferences as long as those drawn by the ALJ are supported by evidence. *Bath Iron Works Corp. v. White,* 584 F.2d at 573. Similarly, it is irrelevant that the appellate court might reach a different conclusion than did the ALJ if it were reviewing the record *de novo. Garvey Grain Co. v. Director, Office of Workers' Comp. Programs,* 639 F.2d at 370.

The claimant in this case contends that the ALJ misapplied the presumption of compensability in 33 U.S.C. § 920(a). She argues that BIW failed sufficiently to rebut the presumption as to the work-relatedness of Sprague's disability. This Court must disagree. Not only did BIW introduce medical evidence from Drs. Dominici and Evans substantial enough to rebut the presumption of compensability, but there is substantial evidence in the record as a whole to support the ALJ's findings on causation. Thus, the Court will proceed directly to an examination of the entire record under the substantial evidence standard.[7]

Dr. Giustra stated at his deposition that blood-borne osteomyelitis is rare in adults, and that the most common cause of adult osteomyelitis is direct innoculation. He testified that his medical records contained no notation of any open wounds on Sprague's left leg. However, he stated that any break in the skin on Sprague's left leg would have been sufficient for entry of osteomyelitis-causing staph bacteria, which are prevalent in the environment. In his opinion, it is unnecessary that a person receive a wound that penetrates to the bone in order to contract osteomyelitis by "direct innoculation." Finally, Dr. Giustra stated that Sprague's osteomyelitis was likely not blood-borne because of the extent of the infection that he had observed in Sprague's left leg. The osteomyelitis had spread throughout almost the entire fibula and had affected adjacent muscle.[8]

Dr. Dominici agreed with Dr. Giustra that a wound penetrating to the bone is unnecessary for non-blood-borne osteomyelitis. However, he stated that an open wound accompanied by infection or inflammation was at least necessary for osteomyelitis to be caused by direct trauma to Sprague's left leg. Because he had no evidence of such infection or inflammation in the left leg, he felt that Sprague's osteomyelitis did not occur because of the July 1975 injuries to his left leg.

Furthermore, he stated that the osteomyelitis was probably due to staph carried through the blood from Sprague's right great toe. He reasoned that Sprague's osteomyelitis was "acute" (because it had not yet appeared in August x-rays of the leg),[9]

---

7. The claimant also argues that the medical evidence that the claimant introduced at the hearing before the ALJ "was [not] . . . given adequate weight pursuant to Section 920(a) of the Act." Brief for Claimant-Petitioner at 10. She claims in her reply brief that, because "the evidence [in this case] hangs in such delicate balance, the presumption should enable the claimant to receive the benefit of the doubt." Reply Brief for Claimant-Petitioner at 14. These contentions reveal a fundamental misunderstanding of the function of the presumption in 33 U.S.C. § 920(a).

As noted in text, the presumption falls out of the case once the employer goes forward with substantial evidence to rebut the presumption. BIW has carried this burden of production in this case. The presumption is thus no longer operative and does not constitute affirmative evidence that can lend weight to the evidence introduced by the claimant.

8. Dr. Giustra, however, conceded the following:
   If we can be certain that there was no direct innoculation into the fibula from an open wound of any sort—any break in the skin— then we can assume with pretty good certainty that the osteomyelitis was a result from [sic] the infection starting in the right toe.

9. Dr. Giustra agreed that Sprague's osteomyelitis was "acute." However, he speculated that Sprague may have had "something starting to smolder" when x-rays were taken of the left leg in August 1975.

and that most acute cases are blood-borne. Like Dr. Giustra, Dr. Dominici stated that blood-borne osteomyelitis was rare in adults, but Dominici believed that Sprague was one of the rare cases. Finally, Dr. Dominici based his conclusion about the cause of Sprague's osteomyelitis on the fact that the same type of bacteria (staph) that caused the osteomyelitis was detected in a culture drawn from Sprague's ulcerated right toe prior to detection of osteomyelitis in the left leg.

Dr. Evans concurred with Dr. Dominici that Sprague's osteomyelitis was caused by entry of staph through the ulcer in the right toe, which he characterized as "deeply open." However, unlike both Dr. Dominici and Dr. Giustra, Dr. Evans believed that direct trauma to Sprague's left toe could have caused osteomyelitis only if it had resulted in an open wound that penetrated to the bones in Sprague's left leg. He stated at his deposition that a mere "superficial infection," "abrasion," or "breakage in the skin" would be insufficient to cause osteomyelitis. He reasoned that, "[t]he bacteria to get into an osteomyelitis occur between the ... growing points of the bone at the epiphysis. And, that has to get in from the bloodstream...." Finally, unlike Drs. Giustra and Dominici, Dr. Evans believed blood-borne osteomyelitis to be common in adults.

Based on the foregoing testimony, the ALJ found that transmission through the blood of bacteria from Sprague's ulcerous right toe caused the osteomyelitis in his left leg. The ALJ noted that the same type of bacteria that caused Sprague's osteomyelitis had been detected in his right great toe. The ALJ also relied generally on the testimony of Drs. Dominici and Evans, stating that "[i]t is significant to note that two of the three treating physicians testified that within reasonable medical probability the staph was carried hematogenously from the right great toe to the left fibula."

The ALJ also expressly rejected the claimant's theory of causation. He noted that Mrs. Sprague had testified that the leg wounds that her husband received in July 1975 were not deep. The ALJ found, however, that trauma to Sprague's left leg could have caused his osteomyelitis only if Sprague received wounds penetrating to the bones in his leg. The ALJ thus credited Dr. Evans' testimony as to non-blood-borne osteomyelitis.

After reviewing the record, this Court concludes that the Board did not err in holding that the ALJ's findings as to causation were supported by substantial evidence. The testimony of Drs. Evans and Dominici certainly provides substantial evidence from which a reasonable man might conclude that the staph detected in Sprague's ulcerous right great toe caused his osteomyelitis. Furthermore, it was not unreasonable for the ALJ to have credited Evans' theory as to how direct trauma can cause osteomyelitis even though Drs. Giustra and Dominici both stated that wounds penetrating to the bone are unnecessary. On appeal, the claimant has neither successfully impeached Dr. Evans' credentials, nor indicated why his testimony is inherently implausible.[10] Given the fact that Drs. Dominici and Giustra *disagreed* as to the *precise* type of trauma necessary to cause non-blood-borne osteomyelitis, this Court cannot say that crediting Evans' testimony was error. *See Hullinghorst Indus., Inc. v. Carroll,* 650 F.2d 750, 759–60 (5th Cir. 1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982) (ALJ not required to accept opinion of any particular medical

10. The claimant attempts to discredit Dr. Evans' testimony by noting that Evans' ultimate opinion on causation was based on a "hypothetical set of circumstances posed by counsel," whereas Dr. Giustra's opinion was based on "observations made in the operating room." Although the Court concedes that Giustra's observation of Sprague's infected leg at the time of amputation could lend some weight to his testimony, it was not unreasonable for the ALJ to credit medical testimony based on hypothetical questions posed by counsel. Furthermore, Dr. Evans *did* observe Sprague's left leg and right great toe prior to the amputation. Finally, Dr. Giustra conceded that the study and treatment of blood-borne diseases is "more regularly within the province of [Evan's] practice than [his]."

expert, but entitled to weigh evidence and draw inferences most reasonable in light of the entire record and common sense). The Board's finding of substantial evidence to support the ALJ's decision [11] is thus affirmed.[12]

## II. Discoverability of Correspondence

█ The claimant contends that the Board erroneously denied her access to a letter written by Dr. Dominici to BIW's attorney. This Court's *in camera* review of this letter revealed that it is a direct response to a prior letter written by BIW's attorney requesting Dominici's opinion as to the cause of Sprague's osteomyelitis. The claimant seeks this letter because it was prepared by the only medical expert who observed Sprague's left leg within six days of his July 1975 injuries, and because she therefore believes that the letter contains factual information about Sprague's medical condition in July and August of 1975 that is vital to establishing causation in this case.[13] Furthermore, she contends that the letter may contain statements contradictory to Dominici's testimony before the ALJ,

11. The Court notes that the Board not only found substantial evidence for the factual findings that the ALJ made, but actually made a fact-finding of its own. The ALJ found that wounds penetrating to the bone are necessary for the "direct innoculation" form of osteomyelitis. The Board sustained this finding. However, in the alternative, the Board stated that Dr. Dominici had testified that open wounds not going to the bone could cause osteomyelitis if the wound became infected or inflamed. The Board then noted that Mrs. Sprague had testified only about shallow cuts and that she had not mentioned inflammation or infection in Mr. Sprague's left leg. Furthermore, the Board stated that Dr. Dominici had observed no cuts or wounds on Sprague's left leg six days after his July 1975 injuries. The Board therefore concluded that "(c)learly the fact that [no inflammation or reaction] . . . was apparent six days after the accident at work is persuasive evidence that a wound of this kind which could be the port of entry for staph causing osteomyelitis did not exist."
Given the Court's holding, it need not decide here whether these alternative factual findings by the Board were permissible. The Court notes, however, that it is doubtful, to say the least, whether the Board had the power to credit Dominici's account (of how direct innoculation osteomyelitis is caused) given the fact that the ALJ had credited the account of Evans. *See Air America, Inc. v. Director, Office of Workers' Comp. Programs,* 597 F.2d 773, 780 (1st Cir. 1979) ("Congress has expressly designated the ALJ as the fact finder in compensation procedures under the Act, restricting the Board's powers of review to a substantial evidence standard.") *Accord Volpe v. Northeast Marine Terminals,* 671 F.2d 697, 700 (2d Cir. 1982) ("The Board is not permitted to supplement the ALJ's findings with its own.").

12. The claimant argues that the causation question in this case is close, and that the ALJ should have resolved this doubtful factual issue in her favor. Several decisions, both from this Circuit and others, state that, because of the humanitarian nature of the Act, *see O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.,* 380 U.S. 359, 362–63, 85 S.Ct. 1012, 1014–1015, 13 L.Ed.2d 895 (1965), "all doubtful questions are to be resolved in favor of the injured employee." *Bath Iron Works Corp. v. White,* 584 F.2d 569, 574 (1st Cir. 1978) (quoting *Young and Co. v. Shea,* 397 F.2d 185, 188 (5th Cir. 1968), *cert. denied,* 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969)). *Accord Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d 264, 267 (D.C. Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982) ("[D]oubtful questions, including factual ones like work-relatedness, must be resolved in favor of claimants.") The claimant is thus apparently contending that this Court should review the record, determine if a reasonable factfinder could conclude on this record that there is no reasonable doubt as to what caused Sprague's osteomyelitis, and, if not, reverse the ALJ's decision for failing to resolve all doubts in favor of the claimant.
The claimant's argument, however, proves too much. It would radically change the limited scope of review that this Court applies to administrative decisions under the traditional substantial evidence standard. This Court must sustain an ALJ's findings under the Act as long as there is enough evidence in the record from which a reasonable mind could conclude that the ALJ's determinations are more likely than not accurate. If such evidence exists, the Court must affirm, even if a reasonable mind could not conclude on the basis of such evidence that the ALJ's findings were beyond reasonable doubt.

13. The claimant contends that discovery of this letter is necessary in part because Dr. Dominici could not remember at the hearing before the ALJ exactly what Mr. Sprague told him about his left leg injuries when Sprague saw him in late July 1975. The claimant believes that the letter contains such information.

thus providing a basis for impeaching that testimony.[14]

In a 2–1 decision, the Board held that Dominici's letter was protected work-product under Fed. R. Civ. P. 26(b)(3). The Board concluded that it was undiscoverable because the claimant had not demonstrated "substantial need" for the document, which 26(b)(3) requires. The Board reasoned that "substantially all" of the factual information contained in the letter came out in Dr. Dominici's testimony before the ALJ.

One member of the Board, however, dissented. He contended that Dominici's letter to BIW's attorney was not work-product at all. Furthermore, the dissent stated that, even if the letter were protected work-product, the work-product immunity had been waived because, as the majority noted, substantially all of the factual information therein had come out in Dominici's testimony.[15] Finally, he observed that certain statements in the letter were inconsistent with Dominici's testimony. The letter could thus be used to impeach Dominici, and the ALJ's refusal to permit discovery was therefore not harmless error.

Fed. R. Civ. P. 26(b)(3)[16] confers qualified immunity from discovery on "documents and tangible things otherwise discoverable under [Fed. R. Civ. P. 26(b)(1)] ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, ... or agent)...." A party may discover such documentary work-product "only upon a showing that [he] ... has substantial need of the materials ... and that he is unable without undue hardship to obtain [their] ... substantial equivalent ... by other means." Id.

Dr. Dominici's letter to BIW's attorney setting forth Dominici's opinion as to the cause of Sprague's osteomyelitis is unquestionably work-product protected under Rule 26(b)(3). The letter was in direct response to various medical questions posed by BIW's attorney in an earlier letter dated March 25, 1976, which clearly reveals that

14. Dr. Dominici's letter is one of a series of six letters that BIW has refused to turn over to the claimant. Four of these other letters, all written by BIW's attorney, are addressed to Dr. Dominici and request his assistance in preparing BIW's case against the claimant. The fifth letter, actually addressed to a third party, poses medical questions about the issue of causation in this case that BIW's attorney hoped Dr. Dominici could answer. It was evidently to a copy of this letter that Dr. Dominici responded.

The claimant's initial brief on appeal seems to request that all six letters be produced. However, her reply brief focuses on Dr. Dominici's letter. See Reply Brief for Claimant-Petitioner at 9–11. Furthermore, the claimant focused on this one letter in oral argument before this Court as well. This Court therefore assumes that the claimant has abandoned any argument that the other five letters be produced. Such an assumption seems especially warranted because these latter five letters contain no factual information about Sprague's medical condition and, in any event, are almost certainly undiscoverable under the work-product doctrine.

15. Although the dissenting member of the Board raised the possibility that BIW waived any work-product immunity by putting Dr. Dominici on the stand, neither the claimant nor BIW has raised or briefed this issue in their memoranda submitted to this Court on appeal. Furthermore, the waiver issue was not devel-

oped in oral argument. The Court therefore declines to reach and decide this issue.

16. The ALJ, the Board, and the parties have all assumed that the Federal Rules of Civil Procedure are applicable to administrative proceedings under the Act. The Court will therefore analyze the discovery issue in this case as if Fed. R. Civ. P. 26(b)(3) governed. However, the Court notes that nothing in either the Act or the regulations promulgated pursuant to the Act indicates that the Federal Rules of Civil Procedure do apply to compensation proceedings. Furthermore, Fed. R. Civ. P. 81(a)(6) provides only that the Rules apply to proceedings to enforce or review compensation orders under the Act. In any case, the Board's choice to apply the standard contained in the Federal Rules seems reasonable, particularly in light of the Supreme Court's admonition in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), that the "general policy against invading the privacy of an attorney's preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production...." Id. at 512, 67 S.Ct. at 394. Cf. United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (work-product doctrine of Hickman v. Taylor applicable in criminal trial.)

the attorney was preparing for an imminent lawsuit. Dr. Dominici's letter was thus prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3).

Furthermore, the fact that a *doctor* and not an *attorney* prepared this letter is irrelevant for purposes of Rule 26(b)(3) work-product protection. Rule 26(b)(3) applies to materials prepared for a party's representative, such as an attorney. Dominici prepared his letter *for* BIW's counsel, thus bringing the letter within the Rule. As the Supreme Court noted in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1976), the work-product doctrine must "necessarily" apply to materials prepared on an attorney's behalf, *id.* at 239 n. 13, 95 S.Ct. at 2170 n. 13, because an attorney must often rely on the assistance of others "in the compilation of materials in preparation for trial." *Id.* at 238, 95 S.Ct. at 2170. "This view," the Court stated, "is reflected in the Federal Rules of Civil Procedure, see Rule 26(b)(3)...." *Id.* at 239 n. 13, 95 S.Ct. at 2170 n. 13. Thus, it is beyond doubt that Dominici's letter is protected from discovery under Fed. R. Civ. P. 26(b)(3) unless the claimant can show a substantial need for the letter and an inability to obtain its substantial equivalent without undue hardship.

■ After reviewing Dominici's letter *in camera,* the Court finds that the claimant cannot make the showing required for discovery under Rule 26(b)(3). The claimant seeks the letter because she believes it contains vital information about causation in this case and about Sprague's medical condition in July and August of 1975, and

because it allegedly could be used effectively to impeach Dominici's testimony. However, the letter contains no significant information about Sprague's medical condition or about the cause of his osteomyelitis that did not also come out in Dominici's testimony before the ALJ. Therefore, the claimant has *already* obtained the "substantial equivalent" of this information, and it is therefore not discoverable under Fed. R. Civ. P. 26(b)(3). Furthermore, the Court is unable to find any statement made in the letter at issue that could be used effectively to impeach Dominici's testimony. No reasonable trier of fact would alter its opinion as to the credibility of Dominici's testimony based on the statements made in this letter. Therefore, the claimant has failed to demonstrate a "substantial need" for the letter for purposes of impeachment. In sum, this Court affirms the decision of the Board[17] denying the claimant access to Dr. Dominici's letter.[18]

The decision of the Board sustaining the ALJ's denial of benefits to the claimant under the Longshoremen's and Harborworkers' Compensation Act is hereby affirmed.

---

17. Even if the work-product rule permitted production of Dominici's letter, the Board's failure to give claimant access to the letter is at most harmless error.

18. The claimant argues that § 907(d) of the Act required Mr. Sprague to seek treatment from Dr. Dominici for his July 1974 injuries "or certainly forego medical compensation [under the Act]." She thus contends that application of the work-product immunity to bar disclosure of Dominici's letter will "effectively be ruling that a claimant who must report to the company doctor according to ... the Act will not be able to discover subsequent reports describing in detail his condition to the company's attorney."

This argument suffers from a fatal flaw: the Act does not require an employee to seek treatment from a physician chosen by the employer in all cases. The employee may seek medical care for employment-related injuries from a doctor of his own choice. 33 U.S.C. § 907(a)–(d). Furthermore, even where the nature of an employee's injury requires him initially to go to a physician chosen by the employer, *see id.* § 907(b), the employee can always later go to another doctor of his own choosing and have this doctor prepare a report.